## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW MEXICO

MVT SERVICES, LLC d/b/a/ MESILLA
VALLEY TRANSPORTATION,

     Plaintiff,

v.                                                                      Civ. No. 18-1128 GJF/KRS

GREAT WEST CASUALTY COMPANY,

     Defendant,

## <u>MEMORANDUM OPINION AND ORDER</u>

THIS MATTER is before the Court on MVT's "Motion for Summary Judgment" [ECF 52] ("Motion").[1]  The Motion is fully briefed.  *See* ECFs 62 (Great West's Response), 72 (MVT's Reply).  Also before the Court are Great West's Objections to MVT's Summary Judgment Evidence and Motion to Strike ("Great West's Objections") [ECF 61] and MVT's Objections to Great West's Summary Judgment Evidence and Motion to Strike ("MVT's Objections") [ECF 71] (collectively "Parties' Objections"), all of which are fully briefed.  *See* ECFs 70 (MVT's Response to Great West's Objections), 78 (Great West's Response to MVT's Objections).  After holding oral argument, examining the parties' briefing and attached exhibits, and reviewing relevant law, the Court will **GRANT IN PART** and **DENY IN PART** MVT's Motion.

### I.     BACKGROUND

On September 15, 2013, a semi-tractor trailer owned by MVT headed eastbound on Interstate 10 in central Texas.  It was just after 3:30 a.m., the weather was clear, and the road was dry.  For reasons still unknown, the semi left the roadway, crashed, and erupted in flames.  Co-drivers John Mitchem and Lawrence Parada perished in the inferno.  As is often the case in the

---

[1] For ease of reference, this opinion refers to the parties as "MVT" and "Great West."

aftermath of such events, litigation soon followed.  But here the litigation was in a class by itself, for the original lawsuit spawned a second lawsuit, which led to a third lawsuit, with still a fourth and (hopefully) final lawsuit landing on the docket of this Court.  The litigation began with the families of the drivers seeking compensation for their deaths but soon enough spun off into separate skirmishes between and among MVT and its insurers over their respective rights and liabilities.  All told, the post-crash litigation has commanded the attention of a Texas state court trial judge, a Texas state court of appeals, two federal district judges in Texas, and now the federal court in this district.  Because each of the lawsuits informs the context in which the pending Motion has arisen, a brief history of them follows.

### A.  The *Parada* Lawsuit

Lawrence Parada's widow and children sued MVT, alleging that its negligence and gross negligence caused his suffering and death.  *Parada v. MVT Services*, LLC, No. 2013–DCV–3852 (Co. Ct. at Law No. 3, El Paso County, Tex. Oct. 10, 2013) ("the *Parada* lawsuit").  MVT sought protection under a Workers Compensation and Employers Liability Policy (the "WC Policy") that it had purchased from Great West.  As relevant here, this protection would have taken two principal forms:  (1) it would have required Great West to defend MVT in the litigation, and (2) it would have permitted Great West on MVT's behalf to invoke Tex. Labor Code Ann. § 408.001(a) ("Exclusive Remedy"), which generally limits recovery of an injured employee (or the surviving spouse) to workers' compensation benefits.  *Id*. at 3-4.

But Great West denied coverage, reasoning that the WC Policy had expired the day before – indeed, just a few hours before – the fatal accident.  Great West instead encouraged MVT to invoke a secondary insurance policy with Crum & Forster ("C&F Policy").  MVT took that step and C&F accepted the tender and provided a defense under its policy.  Given that the C&F Policy

was not a workers' compensation policy, however, the Exclusive Remedy was not available. Consequently, for at least the next eighteen months, MVT and its C&F-provided counsel defended the *Parada* lawsuit as an ordinary tort action rather than a workers' compensation matter.

In May 2015, in conjunction with a separate declaratory judgment action summarized below, MVT attempted a major course correction in the *Parada* lawsuit. Less than four weeks before the trial date, MVT moved first to continue the trial and later to abate the lawsuit and instead permit it to be resolved under the Texas workers' compensation regime. MVT contended, however belatedly, that its WC Policy had not actually expired until *the day after* the accident and emphasized that its workers' compensation carrier *agreed* with its position. Given that its policy was still in effect, MVT sought to invoke its right as an employer to have the *Parada* case adjudicated in the Texas Division of Workers' Compensation, the chief benefit of which was a substantial reduction in litigation exposure as compared to a standard tort suit.

But the Texas state trial court would have none of it, summarily rejecting what the court perceived to be MVT's last-minute attempt to forestall the long-scheduled trial. Stymied, MVT sought mandamus relief from the supervising court of appeals in El Paso, but that effort met a similar fate. Left where it started – a relatively deep-pocketed defendant in a traditional tort suit with terrible facts – MVT (and its insurers) settled the *Parada* lawsuit. The insurance companies tendered their policy limits and, for its part, MVT paid a total of $1 million toward the settlement, comprised of its $500,000 deductible under the Great West Policy, its $250,000 deductible under the C&F Policy, and $250,000 of its own money.

### B.  *MVT v. Great West*:  Declaratory Judgment Action

In the spring of 2015, despite Great West's earlier unambiguous denial of coverage, MVT changed its view about whether its WC Policy had truly expired. To that end, MVT filed a

declaratory judgment action in federal court in El Paso, seeking a ruling that the policy by operation of Texas law had not expired until *the day after* the accident.[2]   In brief, MVT argued that a provision of the Texas Government Code effectively forbade the WC Policy in this case from expiring on a Saturday, Sunday, or legal holiday.  Given that September 14, 2013 – the day on which Great West asserted the policy had expired – was a Saturday, MVT urged the federal court to find and conclude that the policy did not actually expire until Monday, September 16, 2013 (the day *after* the fatal accident).

The fight was over before it really began.  Once MVT's coverage counsel provided Great West's coverage counsel with a copy of the complaint and a demand for coverage, Great West abruptly changed its coverage position and joined with C&F to defend its co-insured in the remainder of the *Parada* litigation, including the efforts to have the matter referred to the Division of Workers' Compensation.  MVT and Great West quietly settled the declaratory judgment action in September 2015 pursuant to a joint stipulation of dismissal.

### C.  *C&F v. Great West*:  Declaratory Judgment and Contribution Action

After the *Parada* lawsuit ended, there were still two scores to settle.  The first involved C&F seeking reimbursement for its expense in defending MVT in *Parada*.[3]  According to C&F, had Great West properly accepted coverage when it should have – and properly defended its insured when it should have – then C&F never would have had to pay anything to *defend* MVT.  Under its theory, C&F's total exposure should have been limited to its policy limits for indemnity, with no additional outlay for legal defense.  Instead, Great West's inexcusable failure to honor its

---

[2] *See MVT Services, LLC dba Mesilla Valley Transportation v. Great West Cas. Co.*, No. EP-15-CV-136-PRM (W.D. Tex. May 12, 2015).

[3] *See Crum & Forster Specialty Ins. Co. v. Great West Cas. Co.*, No. EP-15-CV-00325-DCG, 2017 WL 4002713 (W.D. Tex. Sept. 11, 2017).

contract with its insured required C&F to spend a substantial amount for MVT's legal defense, particularly during the first nineteen months that *Parada* was pending and before Great West changed its coverage position.

In ruling on the parties' cross-motions for summary judgment, the federal district judge in El Paso ruled largely although not entirely in favor of C&F.  He found that Great West's duty to defend MVT arose on October 28, 2013, and that its denial of that duty was wrongful.  The judge further found that C&F involuntarily paid defense costs on behalf of MVT because of Great West's wrongful denial of coverage and were entitled to pro-rata reimbursement.  Following the filing of the order on the cross-motions, C&F and Great West settled the dispute.

### D.  *MVT v. Great West*:  The Instant Lawsuit

The other score to settle remaining from the *Parada* litigation is the one before this Court.  Here, MVT complains that, had Great West initially "accepted coverage of the *Parada* Lawsuit at the time of MVT's tender, Great West could have invoked the exclusive remedy of workers' compensation benefits" rather than allowing the claim to proceed under a tort theory.  *Id*. at 6.  According to MVT, this denial and delay led to virtually unlimited exposure and ultimately caused it $500,000 in damages, specifically pointing to the $250,000 deductible it paid to C&F and the $250,000 of its own money that it contributed toward the settlement.  MVT further alleges that Great West's failure to initially accept coverage also forced it to incur its own defense costs—costs that Great West has failed and still refuses to reimburse.  *Id*. at 7.  In sum, MVT asserts that Great West breached the WC Policy and also violated Texas statutory law pertaining to the prompt payment of insurance claims.

## II.    SUMMARY OF ARGUMENTS

MVT's Motion requests summary judgment on the first two counts of its Amended Complaint, which allege breach of the insurance contract and violation of Chapter 542 of the Texas Insurance Code for failing to promptly pay outstanding defense costs.  Mot. 1.[4]  MVT first argues that, by operation of Texas statutory law, the WC Policy covered the *Parada* lawsuit.  *Id.* at 17-18.  Consequently, Great West had a duty under the WC Policy to defend MVT against the *Parada* lawsuit at the time of tender, which occurred on October 28, 2013.  *Id.* at 18-19.  According to MVT, Great West has already admitted, in correspondence and by way of affidavit, that its Policy was still in place on the date of the fatal accident.  *Id.* at 19-20.  Furthermore, MVT asserts that the outcome of the *Crum* lawsuit collaterally estops Great West from now disputing that its duty to defend arose on October 28, 2013.  *Id.* at 20-22.

MVT next contends that Great West's breach of its duty proximately caused MVT to incur damage.  Specifically, MVT posits that, under Texas Labor Code § 415.002, a worker's compensation insurer possesses absolute authority to invoke the Exclusive Remedy, the invocation of which normally rescues an employer from the substantially greater exposure available in a traditional tort setting.  *Id.* at 23.  MVT emphasizes that Great West's wrongful denial of coverage stripped MVT of that statutory protection and forced MVT to invoke the C&F policy (and its $250,000 deductible) and to contribute an additional $250,000 of its own money to consummate the *Parada* settlement.  *Id.* at 23-24.  MVT identifies as a third component of damage the $41,476.84 in fees it paid to its own attorney for assisting in the *Parada* tort defense.  *Id.* at 24.  MVT contends that, had Great West timely invoked the Exclusive Remedy when the *Parada*

---

[4] The Court's citations to the parties' briefing refers to the ECF pagination.

lawsuit was first tendered, MVT's liability would have been capped at $500,000, i.e., the WC Policy's deductible. *Id*. at 23-24.

Turning to Count Two of its Amended Complaint, MVT argues that Great West violated Chapter 542 of the Texas Insurance Code by failing to reimburse it for attorney's fees it incurred in defending the *Parada* lawsuit. *Id.* at 24-25. MVT asserts that defense costs stemming from an insurer's breach of its duty to defend constitute a cognizable "claim" under Chapter 542 and are therefore reimbursable. *Id*. In addition, MVT maintains that §§ 542.058 and 542.060(a) authorize interest to accrue at 18 percent per annum on any claim when an insurer fails to pay that claim within 60 days of tender by the insured. *Id*. at 25-26. MVT alleges that, on September 1, 2015, it tendered to Great West a request for the *Parada* attorney fees that MVT incurred (that were not covered by C&F), and has yet to receive payment. *Id.* Accordingly, MVT asserts that Great West owes it $41,476.84 in outstanding defense costs and, as of December 30, 2020, an additional $31,090.58 in accrued interest for failing to pay those costs in accordance with §§ 542.058 and 542.060(a). *Id.*

Great West, on the other hand, views many of the events leading up to this lawsuit through a different lens. Great West insists that genuine factual disputes exist between the parties that should prevent the Court from granting summary judgment on the issues of breach, proximate cause, and damages. Resp. 10-18. In response to MVT's breach of contract claim, Great West argues that a breach never occurred. Instead, Great West maintains that MVT withdrew its October 28, 2013, tender on October 31, 2013. *Id*. at 10-11. According to Great West, MVT did not re-tender the *Parada* defense until May 2015 when it filed the declaratory judgment action. *Id*. at 10. At that point, Great West acknowledged the tender, accepted the defense, and immediately acted in compliance with its duties. *Id*. at 12.

Great West also points to what it views as two flaws in MVT's proximate cause analysis. First, Great West contends that, as the insured, MVT was in charge of its own defense in *Parada* and could have sought to invoke the worker's compensation Exclusive Remedy whenever it wanted to. *Id.* at 14-15. Great West alleges that MVT chose not to do so (at least until May 2015) for strategic reasons associated with not wanting to pay an approximate $600,000 premium that MVT would owe to Great West if it invoked the WC Policy. *Id.*; *see* Tr. 65:17-66:25. Because MVT could have – but didn't – invoke the Exclusive Remedy, it was MVT's choice to accept the less friendly forum offered in Texas state court as opposed to the Texas Division of Workers' Compensation. Resp. 14-15. Great West emphasizes that MVT's complaint about having to invoke the C&F policy and pay its deductible are wide of the mark too. After all, because the *Parada* case involved claims of gross negligence that would *not* have been adjudicated in the worker's compensation arena, MVT still would have faced tort exposure in the Texas trial court. This exposure, no doubt, would have counseled MVT to invoke its C&F policy to manage that risk. In sum, according to Great West, its denial of coverage in 2013 did not proximately cause either the failure to invoke the Exclusive Remedy or MVT's invocation of the C&F policy.

Next, Great West denies that it is collaterally estopped by the *Crum* lawsuit from disputing that it owed MVT a duty to defend that ripened at the time of tender on October 28, 2013. *Id.* at 18. Great West primarily relies on the fact that its litigation adversary here – MVT – was neither a party to the *Crum* case nor cast as an implicit adversary in it. *Id.* In an unexpected turn, however, Great West doubles down with the claim that res judicata forbids MVT from even bringing the breach of contract claim at all. *Id.* at 16-19. Great West submits that the dismissal with prejudice of the declaratory judgment dispute that MVT filed against it in 2015 now bars MVT from seeking damages for the alleged breach. *Id.*

Lastly, as to the statutory claim for reimbursement of additional defense costs, Great West asserts that MVT has failed altogether to demonstrate that the defense costs it incurred in the *Parada* lawsuit were reasonable or necessary and, in addition, failed to segregate those fees that related to the *Parada* defense from those that did not.  *Id*. at 19-20.  Great West also points out that MVT has not demonstrated that it has even paid the attorney's fees itself, a failure that should statutorily bar it from seeking reimbursement for the same.  *Id*. at 12.

## III.   SUMMARY JUDGMENT STANDARD

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The entry of summary judgment is mandated "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The party who will bear the burden of proof at trial on a dispositive issue must designate specific facts showing that there is a genuine issue for trial.  *Id*. at 324.  In order for an issue to be genuine, the evidence of it must be such that a reasonable jury could return a verdict for the nonmoving party.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  If there is not sufficient evidence favoring the nonmoving party, there is no issue for trial.  *Id*. at 249. Furthermore, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial."  *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citing *First Nat. Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 289 (1986)) (internal quotation marks omitted).  In the Tenth Circuit, "[a]n issue is 'genuine' if there is sufficient evidence on each side so that a rational trier of fact could resolve

the issue either way.  An issue of fact is 'material' if under the substantive law it is essential to the proper disposition of the claim." *Thom v. Bristol Myers Squibb Co.*, 353 F.3d 848, 851 (10th Cir. 2003) (internal citation omitted).

At the summary judgment stage, "[the non-movant's] version of the facts must find support in the record." *Thomson v. Salt Lake Cnty.*, 584 F.3d 1304, 1312 (10th Cir. 2009).  As with any fact asserted by a party in a summary judgment motion, the non-movant must point the Court to such support by "citing to particular parts of materials in the record."  Fed. R. Civ. P. 56(c)(1)(A).  All material facts set forth in the motion and response that are not specifically controverted are deemed undisputed.  D.N.M.LR-Civ. 56.1(b).

Because the Court decides motions for summary judgment by viewing the facts in the light most favorable to the non-moving party, the Court obeys three general principles.  First, the Court's role is not to weigh the evidence, but only to assess the threshold issue of whether a genuine issue exists as to material facts such that a trial is required.  *See Liberty Lobby*, 477 U.S. at 249.  Second, the Court must indulge all reasonable inferences and resolve all doubts in favor of the non-moving party and construe all evidence in the light most favorable to it.  *See Hunt v. Cromartie*, 526 U.S. 541, 550-55 (1999).  Third, the Court cannot decide issues of credibility.  *See Liberty Lobby*, 477 U.S. at 255.  "[T]o survive the . . . motion, [the non-movant] need only present evidence from which a jury might return a verdict in his favor." *Id*. at 257.  Nonetheless, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts." *York v. City of Las Cruces*, 523 F.3d 1205, 1210 (10th Cir. 2008) (quoting *Scott v. Harris*, 550 U.S. 372, 380 (2007)).

## IV.   EVIDENTIARY OBJECTIONS[5]

Before the Court can identify the undisputed facts, it must address the evidentiary objections made by the parties.

### A.  Great West Objections to MVT Summary Judgment Evidence

#### 1.  *Rigg Affidavit*

Great West first attacks the affidavit of MVT's Chief Financial Officer Dean Rigg (Ex. 1), focusing on paragraphs 3-7, 15, 19, 21-22 and the corresponding documents those paragraphs incorporate (Exs. 1-A through 1-E). Def.'s Obj. 2.  Great West argues that Rigg failed to "lay the proper predicate to authenticate or render admissible the various documents." *Id.*  Specifically, Great West contends that the incorporated documents "have not been proven up as a business record or any other permissible exception to the hearsay rule." *Id.* (citing Fed. R. Evid. 803). Lastly, Great West objects to paragraphs 15, 19, and 21-22 as being made by an interested party affiant proffering "conclusory, self-serving statements that do not meet the standards for summary judgment proof." *Id.* (citations omitted).

The Court construes Great West's objections to paragraphs 3-7 to be restricted solely to the affidavit's alleged failure to establish the foundation necessary to admit the exhibits as business records under Federal Rule of Evidence 803(6).[6]   The hearsay objections to paragraphs 3, 4, 6,

---

[5] Although both parties style their objections as "motions to strike," doing so is unnecessary in light of the 2010 amendments to Rule 56.  *See* FED. R. CIV. P. 56 advisory committee's note to 2010 amend ("There is no need to make a separate motion to strike.  If the case goes to trial, failure to challenge admissibility at the summary-judgment stage does not forfeit the right to challenge admissibility at trial.").  "The plain meaning of these provisions shows that objecting to the admissibility of evidence supporting a summary judgment motion is now a part of summary judgment procedure, rather than a separate motion to be handled preliminarily." *Campbell v. Shinseki*, 546 Fed. App'x 874, 879 (11th Cir. 2013) (unpublished) (citing *Cutting Underwater Technologies USA, Inc. v. Eni U.S. Operating Co.*, 671 F.3d 512, 515 (5th Cir.2012) ("[I]t is no longer necessary for a party to file such a motion; instead, a party may simply object to the material.")).

[6] The Court does not construe Great West to be lodging a separate objection under Federal Rule of Evidence 901 to the authenticity of this document.  Most tellingly, there is no mention anywhere in Great West's objections of Rule 901.

and 7 of the Rigg affidavit (and Exhibits 1-A, 1-B, and 1-E to the affidavit) are **OVERRULED**. Exhibits 1-A, 1-B, and 1-E are documents of independent legal significance, such as contracts, which are considered non-hearsay.  *See Cagle v. The James St. Grp.*, 400 F. App'x 348, 356 (10th Cir. 2010) (unpublished) ("the contract was not excludable as hearsay.  It constituted an act of legal significance . . . not a 'statement' offered for its truth." (citation omitted)); see also Fed. R. Evid. 801(a).  Similarly, Great West's objection to paragraph 6 of the affidavit and its companion Exhibit 1-D is **OVERRULED**, as Exhibit D is a letter written by Great West's coverage counsel. His letter is non-hearsay because it qualifies as "an opposing party's statement" under Rule 801(d)(2)(A), (C), and/or (D).  *See* Fed. R. Evid. 801(d)(2) ("The statement is offered against an opposing party and . . . was made by the party in an individual or representative capacity . . . was made by a person whom the party authorized to make a statement on the subject . . . was made by the party's agent or employee on a matter within the scope of that relationship and while it existed").

Paragraph 5 of the Rigg affidavit and its companion Exhibit 1-C are a different story, however.  There is nothing immediately apparent about Exhibit 1-C that suggests it is a contract itself, is part of or should be considered part of a contract, or otherwise has any independent legal significance.  Instead, Exhibit 1-C appears to be an internal personnel management document created by MVT in the aftermath of entering into a contract with OEP Holdings (Exhibit 1-B). And no matter how easily the information could have been included, there is nothing in the Rigg affidavit that purports to establish the business records foundation under Federal Rule of Evidence

803(6) to make Exhibit 1-C admissible.[7]   Consequently, Great West's objections to paragraph 5 of the Rigg affidavit and Exhibit C are **SUSTAINED**.[8]

Great West last objects to the Rigg affidavit on grounds that paragraphs 15, 19, and 21-22 are conclusory and self-serving statements not suitable for consideration on summary judgment review.  Beginning with paragraph 15, the Court notes that Rigg elsewhere swore that he had personal knowledge of the facts set forth in the affidavit.  Mot. Ex. 1 ¶ 2.  The Court makes the reasonable inference that, as the Chief Financial Officer ("CFO"), Rigg is and has been a member of MVT's senior executive management team.  In such capacity, Rigg is competent to testify about what he, as a member of senior management, understood as the basis for Great West's denial of coverage.  To be sure, the Court would not permit Rigg to testify about how other members of the management team construed Great West's denial of coverage, because doing so would require him either to speculate or to repeat inadmissible hearsay, both of which run afoul of the Federal Rules of Evidence.  Accordingly, construing paragraph 15 consistent with those limitations, the Court will **SUSTAIN IN PART** and **OVERRULE IN PART** Great West's objection to paragraph 15.[9]

---

[7]  To be classified as a business record under Rule 803(6) a document must:

> (1) have been prepared in the normal course of business; (2) have been made at or near the time of the events it records; . . . (3) be based on the personal knowledge of the entrant or of an informant who had a business duty to transmit the information to the entrant; and (4) not have involved sources, methods, or circumstances indicating a lack of trustworthiness.

*United States v. Gwathney*, 465 F.3d 1133, 1140–41 (10th Cir. 2006) (citing *Hertz v. Luzenac America, Inc.*, 370 F.3d 1014, 1017 (10th Cir. 2004)).  In addition, "the proponent of the document must lay a proper foundation for its admission."  *Id.* (citing *United States v. Samaniego*, 187 F.3d 1222, 1224 (10th Cir. 1999)).

[8] MVT conceded at oral argument that the Rigg affidavit did not establish a proper foundation to admit Exhibit 3C as a business record.  Tr. 19:22-20:3.  MVT contended that the Court's decision whether to admit or exclude that exhibit should not change the outcome of the Motion.  Tr. 20:4-10.

[9] The Court hastens to add that this objection is much ado about not very much, as this portion of Rigg's affidavit is simply a summary of the December 2013 letter from David Schubert explaining as Great West's coverage counsel why Great West was denying coverage.  That letter speaks for itself and Rigg paraphrasing it in an affidavit adds little to the Court's analysis.

13

Paragraph 19: Rigg states that MVT "would not have made any contributions to a settlement of the *Parada* Lawsuit aside from its payment of the $500,000 deductible under the policy if it had been able to invoke the protections of the Exclusive Remedy." Ex. 1 ¶ 19.  Clearly, this alleged fact is central to MVT's Motion, specifically the damages element.  But its centrality does not automatically trigger admission.  Rigg's assertion is a complicated one, for accepting it would require one to accept that the live allegation of gross negligence in the *Parada* lawsuit would have either been dismissed by motion or rejected by jury verdict.  And one would have to accept that MVT would not have invoked the C&F policy and would not have settled the gross negligence claim to manage its trial risk.  At least at this point, however, the Court does not need to wrestle with these assumptions because of the narrowness of Great West's objection:  that this portion of the Rigg affidavit is conclusory and self-serving.  Def.'s Obj. 2.[10]  The Court **OVERRULES** Great West's objection to paragraph 19.

Paragraph 21:  as stated above, Rigg swore that he had personal knowledge of the facts set forth in the affidavit.  Mot. Ex. 1 ¶ 2.  The Court therefore again makes the reasonable inference that, as CFO, Rigg is and has been a member of MVT's senior management team.  In such capacity, Rigg is competent to testify that he, as a member of senior management, believed Mr. Blanco's assistance was necessary to defend MVT in the *Parada* lawsuit.  This assertion wanders somewhat close to a conclusory assertion of the kind the Court would ordinarily strike, *see Hall v. Bellmon*, 935 F.2d 1106, 1111 (10th Cir. 1991) ("conclusory and self-serving affidavits are not sufficient" (citing Fed. R. Civ. P. 56(e))), as there is no explanation at all of why the management team believed as it did.  But in its discretion the Court instead construes paragraph 21 as the natural and logical extension of the assertion made in paragraph 20, to which Great West has not objected.

---

[10] At oral argument, the Court disallowed Great West's attempt to broaden its objection to paragraph 19 to include that it is speculative.  Tr. 12:14-13:18.

Paragraph 20 asserts that MVT hired Blanco to assist with its defense in *Parada*.  Paragraph 21 simply goes on to allege that the affiant and his cohorts in management believed their decision to augment their defense team was necessary.  Whether the affiant's view that Blanco's services were "necessary" is material may be a different matter, but Great West has raised no relevance objection to paragraph 21.  For these reasons, Great West's objection to paragraph 21 is **SUSTAINED IN PART** and **OVERRULED IN PART**.  The Court will consider Rigg's affidavit only to the extent it expresses his personal belief that Blanco's assistance was necessary to defend MVT in the *Parada* lawsuit.

Paragraph 22:  the Court's decision is again made easier by the narrowness of Great West's sole objection, specifically, that the paragraph appears in "an affidavit of an interested party proffering conclusory, self-serving statements that do not meet the standards for summary judgment proof."  Def.'s Obj. 2.  Reduced to its essence, paragraph 22 contains two factual assertions: (1) Great West has not paid Blanco's fee, and (2) Great West refuses to pay it.  Neither assertion is conclusory because both are discrete, segregable, and provable facts.[11]  As CFO, Rigg is perfectly suited to know whether Great West has paid the fees and expenses that MVT incurred for Blanco's services.  Similarly, as CFO and a member of senior management, Rigg doubtless would be aware of MVT's attorneys' efforts to collect the payment to which MVT believes itself entitled and of Great West's efforts to stymie its collection.  As Great West did not object to Rigg's foundation for his knowledge of Great West's refusal to pay, the Court had no occasion to consider it.  Consequently, the Court will **OVERRULE** Great West's objections to paragraph 22.

---

[11] That the affiant is the CFO of one of the combatants in this legal skirmish does not nullify him as a competent witness.  And that his testimony is being offered in furtherance of his employer's claims in this lawsuit should surprise no one.

### 2. Ford Affidavit

At oral argument, Great West withdrew and waived its objections to MVT's Exhibit 2 and its attachments.  Tr. 8:25-9:22.

### 3. Blanco Affidavit

Great West objects to the Blanco affidavit and its corresponding attached documents on hearsay grounds.  Def.'s Obj. 3.  The Court **OVERRULES** the hearsay objection and finds that there is sufficient information in and about the records to admit them under Rule 803(6).[12] Moreover, the Court **OVERRULES** Great West's objection to paragraph 3 of the affidavit.  The Court finds nothing conclusory or unduly self-serving about an attorney explaining when he started and the scope of work he did for a client.  On the contrary, that is the very point of the Blanco affidavit.

## B. MVT's Objections

MVT lodges several objections against Great West's summary judgment evidence.  For clarity, the Court will rule on each piece of evidence by category.

### 1. Hearsay

#### a.  Exhibit 1

MVT's objection to David Hawkins' affidavit is **OVERRULED**.  The Court adds, however, that Hawkins' putative testimony is limited to explaining that he assembled the 28 exhibits by consulting various files maintained by Great West.  The Court does not and will not permit Hawkins—by affidavit, live testimony, or otherwise—to offer an opinion about whether any of the exhibits are "business records."  That decision is for the Court alone.

---

[12] The Court is not, however, admitting the affidavit (or its corresponding exhibits) as "statements by a party's representative."  *See* Pl.'s Resp. Def.'s Obj. 7.  Rule 801(d)(2), which defines as non-hearsay what are commonly referred to as "admissions," does not allow for a party to introduce *its own statements*.

### b.  Exhibit 1(A)

MVT's objection to the Rigg affidavit is **OVERRULED**.  This exhibit qualifies for admission as "an opposing party's statement," and therefore non-hearsay, under Federal Rule of Evidence 801(d)(2)(A), (C), and/or (D).[13]  The Court need not and does not address Great West's alternative argument that Exhibit 1(A) is separately admissible under Rule 803(6).

### c.  Exhibit 1(B)

As for Exhibit 1(B), the Court finds that MVT has **WAIVED** its hearsay objection to Tammy Koopman's affidavit by including it as part of its own summary judgment evidence.  *See* Pl.'s Mot. Ex. 3-E, ECF 52-4.  In addition, in its response to Great West's Objections, MVT stipulated to the Court's consideration of the exhibits to Koopman's affidavit under Rule 106, *see supra*.  *See* Pl.'s Resp. Def.'s Obj. 8-9.

### d.  Exhibit 1(C)

MVT's objection to Exhibit 1(C), the OEP First Report of Injury, is **SUSTAINED**.  The report was written by personnel employed by OEP, which is not a party to this lawsuit.  Consequently, Rule 801(d)(2) is not applicable.  Moreover, there is no evidence before the Court, and certainly none in the Hawkins affidavit, that establishes the manner in which OEP created and maintained this report or that "the record was made at or near the time by—or from information transmitted by—someone with knowledge" of the event documented in the record.  Fed. R. Evid. 803(6).  Therefore, Great West has failed to establish the foundation for admissibility of this exhibit as a business record.

### e.  Exhibit 1(J)

Here, MVT objects to its own answer in the *Parada* lawsuit.  This objection is

---

[13] To its credit, MVT withdrew at the motion hearing its argument to the contrary.  Tr. 16:10-25.

**OVERRULED**.  This exhibit is non-hearsay under Rule 801(d)(2)(A) and/or (C).  The Court need not and does not address Great West's alternative argument that this exhibit is separately admissible as a publicly available judicial pleading.

f.   Exhibit 1(V)

MVT again objects to a court filing it made in a separate lawsuit, this time the complaint in the federal declaratory judgment action it filed in the Western District of Texas.  This objection is likewise **OVERRULED** as the exhibit is non-hearsay under Rule 801(d)(2)(A) and/or (C).  The Court need not and does not address Great West's alternative argument that this exhibit is separately admissible as a publicly available judicial pleading.

g.   Exhibit 1(W)

MVT's objection to a letter written by Caroline Ford, in her capacity as its outside counsel, is **OVERRULED**.  This exhibit is non-hearsay under Rule 801(d)(2)(A) and/or (C).  In addition, the Court finds that MVT has **WAIVED** its hearsay objection to Ford's letter by including it as part of its own summary judgment evidence.  *See* Mot. Ex. 2-A, ECF 52-3.  In addition, in its response to Great West's objections to its summary judgment evidence, MVT stipulated to the Court's consideration of the exhibit to Ford's letter under Rule 106, *see supra*.  *See also* Pl.'s Resp. Def.'s Obj. 8-9.  The Court need not and does not address Great West's alternative argument that this exhibit is separately admissible as a business record.

h.   Exhibit 1(AB)

MVT objects to the index of an appendix filed by another litigant in support of its motion for partial summary judgment in another case.  This objection is **SUSTAINED**.  Great West's only response to MVT's objection is that this index is a "public record" under Rule 803(8) because it was filed in a court case.  *See* Def.'s Resp. Pl.'s Obj. ¶ 6.  That rule is clearly not applicable,

however, as it requires the document to be a "record or statement of a public office" that memorializes "the office's activities," "a matter observed while under a legal duty to report," or "factual findings from a legally authorized investigation." Fed. R. Evid. 803(8). Whatever else it may be, Exhibit 1(AB) is none of those.

### i.   Exhibit 1(D)

The Court **OVERRULES** MVT's objection to this exhibit. The Court considers the document to be non-hearsay, as very little in this exhibit even qualifies as an "assertion," and none of it appears to be offered for its truth. Furthermore, the lion's share of the exhibit consists of an email typed by MVT's general counsel (independently admissible under Rule 801(d)(2)(A) or (C)) and an attached email that MVT's general counsel adopted or believed to be true (independently admissible under Rule 801(d)(2)(B)).[14]

### j.   Exhibits 1(E), 1(F), 1(G), 1(H), 1(M), 1(Q), 1(S), 1(T), 1(U)

The Court **OVERRULES** MVT's objection to these exhibits, as they are admissible as opposing party's statements under one or more subsections of Rule 801(d)(2). The Court also considers the statements of any other declarant included therein to be simply for context.

### k.   Exhibit 1(L)

The Court **SUSTAINS** MVT's objection to this exhibit. Great West's only argument for admissibility is that the exhibit "comprise[s] statements by party representatives or an opposing party made in its representative capacity" and is also a business record, citing Rules 801(2) [sic] and 803(6). Def.'s Resp. Pl.'s Obj. ¶ 7. Exhibit 1(L) is none of these things, as it is a Decision

---

[14]   MVT lodged a blanket hearsay objection to the entire document "to the extent the evidence is offered for the truth of the matter asserted." Pl.'s Obj. 3. MVT made no effort to analyze on any more granular level this or any other exhibit to which it was making a hearsay objection, for example by pinpointing those statements in the exhibits that are hearsay and for which there is no apparent exception. The Court will not undertake *sua sponte* a line-by-line analysis of these exhibits on the off-chance that there might be some inadmissible hearsay buried within. Instead, the Court is left to match MVT's high-level hearsay objection with a similarly high-level admissibility ruling.

and Order by the Texas Department of Insurance, Division of Workers' Compensation, in *Michael Price v. Great West Casualty Co.*, Dkt. No. HE-13232028-01-HE47.

l.   Exhibit 1(R)

The Court **SUSTAINS** MVT's objection to this exhibit.  Great West's only argument for admissibility is that the exhibit "comprise[s] statements by party representatives or an opposing party made in its representative capacity" and is also a business record, citing Rules 801(2) [sic] and 803(6).  Def.'s Resp. Pl.'s Obj. ¶ 7.  The emails in this exhibit were written by claims personnel employed by companies not parties to this lawsuit, and the emails do not include any participation by any declarant who could be considered as MVT's agent or representative.  Consequently, Rule 801(d)(2) is not applicable.  Moreover, there is no evidence before the Court, and certainly none in the Hawkins affidavit, that establishes the manner in which these employees created and maintained the emails or that the emails were "made at or near the time by—or from information transmitted by—someone with knowledge" of the event documented in the record.  Fed. R. Evid. 803(6).  Therefore, Great West has failed to establish the foundation for admissibility of Exhibit 1(R) as a business record.

m.   Exhibit 1(Z), 1(AA)

The Court **OVERRULES** MVT's objections to these exhibits.  After reviewing Great West's response to MVT's Motion, the Court concludes that Great West is not offering these billing records for their truth.  Instead, Great West is offering them only to show that there is some overlap and duplication between certain billing events on the records for Attorneys Skipworth, Rincon, and Blanco.  *See* Def.'s Resp. Pl.'s Mot. at 8, 14.

2.   *Relevance*

MVT lodges a relevance objection to sixteen exhibits on the theory that they relate in whole

or in part to two issues that MVT asserts are irrelevant as a matter of law: (1) whether MVT "withdrew" its tender of defense to Great West in the *Parada* lawsuit, and (2) whether, for the purposes of defense and indemnity in the *Parada* lawsuit, MVT considered itself to still be covered by the WC policy with Great West. *See* Pl.'s Obj. 4-5. The Court **OVERRULES** MVT's objection. The Court considered these exhibits in evaluating the parties' arguments with respect to the duty, breach, and causation elements of Count 1. The Court's decision to deny MVT's relevance objection, however, does not control the Court's decision on the parties' legal arguments or the outcome of the affected portion of the Motion.

### 3. Miscellaneous Objections

MVT lodges an objection to another subset of five exhibits on the theory that "the cited evidence does not support the facts for which [they are] proffered." Pl.'s Obj. 5. MVT cites no case law in support of its theory that these exhibits should be stricken for that purpose. The Court instead construes MVT's objection to be in the nature of legal argument about why the exhibits do or do not create a triable fact issue or in some other way do or do not demonstrate whether MVT is entitled to judgment as a matter of law. Consequently, the Court **OVERRULES** MVT's objections to Exhibits 1(D), 1(H), 1(I), 1(Z), and 1(AA) on the basis that they do not stand for the evidentiary proposition for which they are offered. The Court instead has made its own careful and independent assessment of the evidentiary value of these exhibits, indulging all reasonable inferences about them in favor of Great West as the party opposing the summary judgment motion.

## V.   UNDISPUTED FACTS

For the purposes of this Motion, the Court finds the following facts to be undisputed:

1. MVT purchased the WC Policy from Great West for an original coverage period of January 1, 2013, through January 1, 2014.  Mot., Ex. 1-A.

2. The WC Policy provided for Texas workers' compensation coverage and contained a duty to defend.  *Id.*

3. On August 13, 2013, MVT requested that Great West terminate its Texas workers' compensation coverage.  Mot., Exs. 1 ¶ 19, 3-E; Resp., Ex. 1(A), (B).

4. On August 14, 2013, Great West processed the termination request and filed the notice of termination with the Texas Department of Insurance on August 15, 2013.  *Id.*

5. By operation of Texas law, the termination of the WC Policy ordinarily would become effective 30 days after notice was filed with the Texas Department of Insurance.  Mot. 10; Resp., Ex. 1(B).[15]

6. But because the effective cancellation date of the WC Policy fell on Saturday, September 14, 2013, that date was therefore extended to Monday, September 16, 2013.  Mot., Ex. 2-B.[16]

7. The double-fatality underlying the *Parada* lawsuit occurred on Sunday, September 15, 2013.  Mot., Exs. 1, 3-F, 3-O.

---

[15] *See* Tex. Labor Code § 406.007(c) (providing in pertinent part that termination of coverage occurs on "the 30th day after the date of filing of notice [of termination] with the division").

[16] Under the Texas Government Code, "[i]f the last day of any *period* is a Saturday, Sunday, or legal holiday, the period is extended to include the next day that is not a Saturday, Sunday, or legal holiday." Tex. Gov't Code Ann. § 311.014(b) (emphasis added).  This rule applies to "each code enacted by the 60th or a subsequent legislature as part of the state's continuing statutory revision program."  § 311.002; *see also* § 1.002 (observing that Chapter 311 "applies to the construction of each provision [of the Labor Code] except as otherwise expressly provided").   Here, the provision governing termination of coverage, § 406.007, was first enacted during the 73rd legislative session and does not expressly override Chapter 311's computation of time rule.  Therefore, because September 14, 2013, fell on a Saturday, by operation of Texas law the Policy period was extended to Monday, September 16, 2013.

8. The *Parada* plaintiffs' initial petition, which included an allegation of gross negligence, was filed in Texas state court on October 10, 2013.  Mot., Ex. 3-A.

9. October 28, 2013, MVT tendered the *Parada* lawsuit to Great West.  Mot., Exs. 1 ¶ 14, 3-O.

10. On December 10, 2013, Great West denied MVT's claim on the basis that it arose from an incident occurring outside the coverage period.  Great West consequently refused to defend MVT in the *Parada* lawsuit.  Mot. Ex. 1-D.

11. MVT retained Steven Blanco as counsel to assist in defending the *Parada* lawsuit.  Mot., Ex. 1 ¶ 20; *id*., Exs. 2-B, 4.

12. MVT invoked the C&F Policy to defend against the *Parada* lawsuit.  Mot., Exs. 1 ¶ 16; *id*. 2-B, 4; Resp., Ex. 1(R).

13. On May 12, 2015, MVT filed a declaratory action against Great West in federal district court.  That action was dismissed with prejudice on September 28, 2015, per stipulation of MVT and Great West.  Resp., Ex. 1(V)

14. On May 22, 2015, Great West amended its initial coverage determination and agreed to defend MVT under the WC Policy against the *Parada* lawsuit.  Mot., Ex. 2-B; Resp., Ex. 1(X).

15. Beginning May 12, 2015, MVT began the process to invoke the Exclusive Remedy in the *Parada* action, but the Texas district and appellate courts denied MVT's request.  Mot., Ex. 3 et seq.

16. The *Parada* lawsuit settled for $3,500,000, with MVT being responsible for $1,000,000. Of the $1,000,000, MVT paid $500,000 to Great West in satisfaction of the WC Policy's deductible, MVT paid $250,000 in satisfaction of the C&F Policy's deductible, and MVT

contributed an additional $250,000 toward the settlement with the *Parada* plaintiffs.  Mot., Ex. 1 ¶ 18.

17. On September 1, 2015, MVT tendered to Great West a claim for $41,476.84 in attorney's fees incurred by Blanco in assisting in MVT's defense in the *Parada* lawsuit.  Mot., Ex. 2-C.  Great West has declined to pay these costs, Mot., Ex. 1 ¶ 22, and there is no evidence before the Court that, prior to this lawsuit, Great West responded to MVT's tender of this claim in any way.

18. C&F sued Great West in federal court over their respective duties to MVT in the *Parada* lawsuit.  That court held *inter alia* that Great West's duty to defend MVT arose on October 28, 2013, and that its failure to honor its duty was wrongful.  Mot., Exs., 3-M, O.

## VI.   ANALYSIS

As a preliminary matter, Texas law governs the Policy and the parties do not contest its application.  *See* Mot.; *see generally*, Resp.

### A.  Breach of Contract

Recently, the Texas Supreme Court reiterated that an "'insurance policy is a contract' that establishes the respective rights and obligations to which an insurer and its insured have mutually agreed."  *USAA Texas Lloyds Co. v. Menchaca*, 545 S.W.3d 479, 488 (Tex. 2018) (*quoting RSUI Indem. Co. v. The Lynd Co.*, 466 S.W.3d 113, 118 (Tex. 2015)).  Texas courts therefore "construe a policy using the same rules that govern the construction of any other contract."  *Id*. (citing *Ulico Cas. Co. v. Allied Pilots Ass'n*, 262 S.W.3d 773, 778 (Tex. 2008)).  Consequently, for MVT to succeed on its breach of contract claim as a matter of law, the undisputed material facts must establish "(1) the existence of a valid contract; (2) [MVT] performed or tendered performance as the contract required; (3) [Great West] breached the contract by failing to perform or tender

performance as the contract required; and (4) [MVT] sustained damages as a result of the breach." *Id*. n.21; *see also S & S Emergency Training Sols., Inc. v. Elliott*, 564 S.W.3d 843, 847 (Tex. 2018).

The parties do not dispute the existence of the Policy or its validity. Nor do they dispute that MVT satisfied its performance obligation by notifying Great West of the *Parada* suit on October 28, 2013. *See* Mot. 12, Resp. 10. Therefore, the Court must determine only whether (1) Great West's duty to defend arose on October 28, 2013, (2) Great West breached that duty, and (3) MVT sustained damages as a result.

### 1. *Great West's Duty to Defend Arose on October 28, 2013*

MVT argues that the WC Policy was still in effect at the time of the double-fatality and that the Policy imposed on Great West the duty to defend. According to MVT, this duty arose on October 28, 2013, when it notified Great West of the *Parada* lawsuit. Mot. 1, 17-18. In addition, MVT contends that Great West is collaterally estopped by the outcome of the *Crum* lawsuit from even challenging whether its duty to defend arose on October 28, 2013. Mot. 20-22. For its part, Great West argues that MVT withdrew the initial tender and did not re-tender the defense of the *Parada* claim until May 15, 2015, at which time Great West accepted the tender and launched its defense of MVT. Resp. 10-12. Moreover, Great West argues that res judicata bars all of MVT's claims because MVT should have raised them in the lawsuit it filed against Great West back in 2015. *Id*. at 16-19.

For the following reasons, the Court concludes that the undisputed facts demonstrate that Great West's duty to defend arose on October 28, 2013, and persisted without interruption thereafter. The Court further concludes that Great West is collaterally estopped by the *Crum* litigation from making any claim to the contrary. Finally, the Court concludes that res judicata does not bar MVT from pursuing any of its claims in this lawsuit.

a.   Traditional Summary Judgment Analysis Yields the Answer

The threshold question of duty to defend requires the Court to make two inquiries:  (1) are the material facts necessary to decide that question in genuine dispute; and (2) if not, does the application of Texas law to the undisputed facts compel the conclusion that Great West owed a duty to defend MVT in the *Parada* lawsuit arising at and from the time of the original tender?  The Court's answers are no and yes, respectively.

Texas applies the "eight-corners" rule to determine whether an insurer has a duty to defend an insured against a third-party lawsuit.  *Lyda Swinerton Builders, Inc. v. Oklahoma Sur. Co.*, 903 F.3d 435, 446 (5th Cir. 2018) (citing *Laney Chiropractic & Sports Therapy, P.A. v. Nationwide Mut. Ins. Co.*, 866 F.3d 254, 259 (5th Cir. 2017)); *see also Zurich Am. Ins. Co. v. Nokia, Inc.*, 268 S.W.3d 487, 491 (Tex. 2008).  This rule requires a court to "look to the facts alleged within the four corners of the petition (or complaint) in the underlying lawsuit, 'measure them against the language within the four corners of the insurance policy, and determine if the facts alleged present a matter that *could potentially be covered* by the insurance policy.'"  *Lyda Swinerton Builders, Inc.,* 903 F.3d at 446 (*quoting Ewing Constr. Co. v. Amerisure Ins. Co.*, 420 S.W.3d 30, 33 (Tex. 2014) (emphasis added)).

> Importantly:
>
> If the petition pleads facts sufficient to create the potential of covered liability, then the insurer has a duty to defend the entire case, even if some of the alleged injuries are not covered.  While courts may not read facts into the petition or speculate as to factual scenarios which might trigger coverage under the policy, they may draw inferences from the petition that may lead to a finding of coverage.  The truth or falsity of the allegations is immaterial: even if the allegations are groundless, false, or fraudulent the insurer is obligated to defend.  Moreover, [w]hen reviewing the pleadings, courts must focus on the factual allegations, not the asserted legal theories or conclusions.

*Id*. at 477 (internal citations and quotations omitted).

Applying the eight-corners rule, this Court concludes that the undisputed material facts show that Great West's duty arose on October 28, 2013.  The initial petition in *Parada* was a claim covered by the WC Policy that involved events occurring – everyone now agrees – during a period covered by the Policy.[17]  The undisputed facts speak for themselves:  the double-fatality occurred *the day before* the Policy expired.[18]

On the question of when its duty to defend arose, Great West's primary argument is the same one it makes in denying that it breached the duty:  MVT "withdrew" its tender of the *Parada* claim in late October 2013 and did not re-tender it and request coverage until May 2015.  Resp. 10.  In other words, Great West contends that MVT relieved it of whatever duty to defend it may have had in 2013, and the duty only ripened again in 2015.  Because here the elements of duty and breach necessarily become intertwined, the Court will address Great West's arguments under the breach analysis set forth *infra*.  At this point, absent a true withdrawal of tender, it is enough for the Court to conclude that the undisputed facts demonstrate that a covered claim occurred during the period of coverage, which triggered under the plain language of the WC Policy a duty for Great West to accept the tender and commence the defense.

---

[17] At oral argument, counsel for Great West suggested that the effective termination date of the Policy as published by the Texas Department of Insurance may trump or supersede the effective date as measured by the application of the operative provision of the Texas Government Code.  *See* Tr. 62-64.  As counsel conceded that Great West did not actually make this argument in this litigation, *see id.*, the Court has no need to address it further.

[18] Although it is not necessary for the Court to make any findings in this regard, it seems well beyond debate that Great West denied coverage – and MVT accepted the denial of coverage – because both of them believed the wreck occurred the day *after* the Policy expired.  That both of these sophisticated enterprises were operating unaware of the Texas Government Code and its effect on the Policy's termination date is both obvious and beside the point.  No matter how inadvertent, ignorance of the law rarely excuses anyone, and here the burden of that ignorance falls on the shoulders of Great West.

### b.  Great West Is Estopped from Contesting its Duty to Defend

As MVT seeks to do here, "[a] party may use the doctrine of offensive collateral estoppel 'to estop a defendant from relitigating an issue that the defendant litigated and lost in prior litigation with another party.'" *Weaver & Tidwell, L.L.P. v. Guarantee Co. of N. Am. USA*, 427 S.W.3d 559, 573 (Tex. App.—Dallas 2014) (quoting *Goldstein v. Comm'n for Lawyer Discipline*, 109 S.W.3d 810, 812 (Tex. App.—Dallas 2003, pet. denied)).  A party seeking the benefit of collateral estoppel must establish that "(1) the facts sought to be litigated in the second action were fully and fairly litigated in the first action; (2) those facts were essential to the judgment in the first action; and (3) the parties were cast as adversaries in the first action." *Sysco Food Servs., Inc. v. Trapnell*, 890 S.W.2d 796, 801 (Tex. 1994) (citations omitted).  Furthermore, the issue decided in the prior action must be identical to the issue in the pending action.  *State & Cty. Mut. Fire Ins. Co. v. Miller*, 52 S.W.3d 693, 696 (Tex. 2001).  The doctrine no longer requires "[s]trict mutuality of parties" and "[t]o satisfy the requirements of due process, it is only necessary that the party *against whom* the doctrine is asserted was a party or in privity with a party in the first action." *Sysco Food Servs., Inc.*, 890 S.W.2d. at 801-02 (citations omitted) (emphasis in original).

But before allowing the offensive use of issue preclusion, a trial court must consider what are known as the *Parklane Hosiery* factors.  *See Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 329-30 (1979).  The first factor asks whether the "application of the doctrine will tend to increase litigation by allowing a plaintiff to 'wait and see' before filing suit instead of joining in the prior litigation*." Goldstein v. Comm'n for Lawyer Discipline*, 109 S.W.3d 810, 813 (Tex. App.—Dallas 2003) (quoting *Parklane Hosiery*, 439 U.S. at 329–330).  The second requires a court to consider the "defendant's incentive in the first action to vigorously defend the suit." *Id*.  The last two factors examine whether the issue to be precluded was inconsistent with other prior decisions and whether

procedural opportunities would be available in the second suit that were unavailable in the first. *Parklane Hosiery*, 439 U.S. at 330-32. A trial court has broad discretion in determining whether to allow a plaintiff the use of offensive collateral estoppel. *Id.* at 331. And a trial court abuses this discretion only when its action is arbitrary and unreasonable, without reference to guiding rules or principles. *Beaumont Bank, N.A. v. Buller*, 806 S.W.2d 223, 226 (Tex. 1991).

### 1) MVT has established the elements of collateral estoppel

Great West argues that MVT's attempted offensive use of issue preclusion fails for two reasons: (1) "MVT was not a party to nor cast as an adversary to [Great West] in the *Crum* Lawsuit" and (2) the "*Crum* Lawsuit pertained to issues of declaratory relief and subrogation and contribution, not breach of contract." Resp. 18. Great West's first argument is easily disposed of. As stated above, collateral estoppel does not require "[s]trict mutuality of parties" but rather only that "the party against whom the doctrine is asserted was a party or in privity with a party in the first action." *Sysco Food Servs*., 890 S.W.2d at 802; *see Eagle Properties, Ltd. v. Scharbauer*, 807 S.W.2d 714, 721 (Tex. 1990*); BP Auto. LP v. RML Waxahachie Dodge*, LLC, 517 S.W.3d 186, 200 (Tex. App.—Texarkana 2017). C&F's standing to sue Great West in September 2015 derived primarily from its status as MVT's subrogee. In other words, C&F stood in the shoes of MVT and asserted rights against Great West that MVT itself would have been allowed to assert. The Court concludes that this subrogation-anchored relationship is a sufficient basis on which to find that MVT was "cast as an adversary" to Great West in the *Crum* lawsuit.

The Court turns next to Great West's assertion that collateral estoppel should not apply because the "*Crum* Lawsuit pertained to issues of declaratory relief and subrogation and contribution, not breach of contract." Although those distinctions are true, they make little difference in the collateral estoppel analysis. What matters is whether the issue of when Great

West's duty to defend arose was litigated in the *Crum* lawsuit and decided by the *Crum* court.  To determine whether the facts associated with the duty issue were fully and fairly litigated in the first action, this Court must consider "(1) whether the parties were fully heard, (2) [whether] the court supported its decision with a reasoned opinion, and (3) [whether] the decision was subject to appeal or was in fact reviewed on appeal."  *BP Auto. LP*, 517 S.W.3d at 200 (quoting *Mower v. Boyer*, 811 S.W.2d 560, 562 (Tex. 1991)).  These elements are satisfied here and Great West does not seriously contend otherwise.  Great West and C&F filed cross-motions for summary judgment on a host of legal issues, including whether Great West's duty to defend arose on October 28, 2013.  *See Crum & Forster Specialty Ins. Co.*, No. EP-15-CV-00325-DCG, ECFs 36 (1st C&F MSJ), 38 (1st Great West MSJ), 84 (C&F Partial MSJ), 85 (2nd Great West MSJ).   Great West had the same motivation to defend the duty question in *Crum* as it does here.  In addition, the *Crum* court issued a well-reasoned opinion that was subject to appeal, though the parties instead decided to resolve their dispute after the opinion was filed and forego appellate review.

Next,  in determining "whether a fact issue [was] essential to the [prior] judgment, i.e., whether it [was] an 'ultimate issue,' [courts] look to the factual determinations made by the trier of fact that [were] 'necessary to form the basis of [that] judgment.'"  *Id.* (quoting *Tarter v. Metro. Sav. & Loan Ass'n*, 744 S.W.2d 926, 928 (Tex. 1988)).  And, "although the issue must be identical" to the instant case, "the cause of action may be different in the second action.  *Id.* (citing *Johnson & Higgins of Tex., Inc. v. Kenneco Energy, Inc.*, 962 S.W.2d 507, 521 (Tex. 1998)).  Therefore, it matters little that the *Crum* lawsuit was premised on declaratory relief and subrogation.  What did matter in that case – among the ultimate issues – was whether Great West had a duty to defend MVT in the *Parada* lawsuit and when that duty arose.  Indeed, according to the *Crum* court, the "threshold question in determining whether Crum & Forster has a right to reimbursement for the

defense costs it paid on behalf of MVT is whether and when Great West had a duty to defend MVT." *Crum & Forster Specialty Ins. Co. v. Great W. Cas. Co.*, No. EP-15-CV-00325-DCG, 2017 WL 4002713, at *4 (W.D. Tex. Sept. 11, 2017). That issue in *Crum* is identical to the issue here.

Accordingly, unless this Court finds that offensive use of collateral estoppel would be unfair, Great West is precluded from contesting that it "had a duty to defend [MVT], and the petition from the *Parada* lawsuit implicated [that] duty to defend when it was tendered to [Great West] on October 28, 2013." *Id*. at 5.

2)  Fairness

This Court finds MVT's offensive use of collateral estoppel to be fair under the circumstances of the instant case. First, there is no evidence suggesting, and Great West does not seriously assert, that MVT sat out the *Crum* litigation in favor of a "wait and see" approach. This Court need not speculate on whether MVT could have intervened in the *Crum* lawsuit as Great West does not contend that it should have. Even though determination of Great West's duty was an ultimate issue in *Crum*, the associated claims of contribution and defense costs allocation between two of its insurers did not concern MVT. MVT's primary concern, on the other hand, stemmed from what it alleges was having to pay extra money to defend and settle the *Parada* lawsuit. Thus, this Court is of the opinion that MVT was not a necessary and indispensable party in *Crum* and neither party to the *Crum* case sought to make it one.

Furthermore, the *Crum* lawsuit involved a substantial amount of money, into perhaps the multiple millions, so the Court is reluctant to find that Great West did not have the incentive or motivation to vigorously defend itself. The third *Parklane Hosiery* factor of whether the issue to be precluded was inconsistent with other prior decisions is not implicated here. Finally, Great

West makes no argument that "procedural opportunities" would be available in this case that were not present in *Crum*.

For the foregoing reasons, the Court holds that Great West is collaterally estopped from disputing that its duty to defend MVT in the *Parada* lawsuit arose on October 28, 2013, and persisted without interruption thereafter.

### c.   MVT's Claims Are Not Barred by Res Judicata[19]

Great West argues that the declaratory judgment action that MVT filed against it in 2015, which the parties later dismissed by stipulation, now bars MVT's claims for damages in the instant lawsuit.  Resp. 16-19.  In Texas, res judicata or "claim preclusion" occurs when there is "(1) a prior final judgment on the merits by a court of competent jurisdiction, (2) identity of parties or those in privity with them, and (3) a second action based on the same claims as were raised or could have been raised in the first action."  *Harmon v. Dall. Cty.*, 927 F.3d 884 (5th Cir. 2019) (quoting *Amstadt v. U.S. Brass Corp.*, 919 S.W.2d 644, 652 (Tex. 1996)).

Great West cites nine cases in support of its theory that the res judicata doctrine applies to MVT's claims.  Resp. 16-19.  Whatever other points of law they might stand for, these cases do

---

[19] Both parties lodge arguments that a U.S. District Court's ruling has a preclusive effect on this Court, i.e., issue preclusion (collateral estoppel) and claim preclusion (res judicata).  While not addressed by the parties' briefing, in a successive federal diversity action these issues are generally a "matter of federal common law."  *Cudd Pressure Control, Inc. v. New Hampshire Ins. Co.*, 645 F. App'x 733, 738 n.2 (10th Cir. 2016) (unpublished) (citing *Semtek Int'l Inc. v. Lockheed Martin Corp.*, 531 U.S. 497, 508 (2001) ("federal common law governs the claim-preclusive effect of a dismissal by a federal court sitting in diversity")); *see also Smith v. Bayer Corp.*, 564 U.S. 299, 307 n.6 (2011) ("We have held that federal common law governs the preclusive effect of a decision of a federal court sitting in diversity.").  In turn, federal common law directs a court to apply "the law that would be applied by state courts in the State in which the federal diversity court sits."  *Semtek Int'l Inc.*, 531 U.S. at 508.  Therefore, since both parties exclusively cite Texas preclusion law (rather than arguing either New Mexico choice of law requires an application of Texas Law or that Tenth Circuit law governs), *see, generally* Mot., Resp., and since both decisions upon which each party rely were issued by a Texas U.S. District Court sitting in diversity (or alleged to be sitting in diversity as an additional jurisdictional basis to the federal Declaratory Judgment Act), *MVT Services, LLC dba Mesilla Valley Transportation v. Great West Cas. Co.*, No. EP-15-CV-136-PRM (ECF 1, Jurisdiction asserted – diversity), *Crum & Forster Specialty Ins. Co. v. Great W. Cas. Co.*, No. EP-15-CV-00325-DCG (ECFs 1(complaint), 7 (amended complaint), 19 (second amended complaint), Jurisdiction asserted – Declaratory Judgment Act, 28 U.S.C. §§ 2201-02 *and* diversity), the Court will apply Texas law and not consider the choice-of-law matter any further.

not address the most important distinction of the 2015 lawsuit between the parties:  MVT demanded *only* declaratory relief.[20]  While it appears that the Texas Supreme Court has not specifically ruled on this fact pattern, other persuasive authority makes clear that this distinction is dispositive.  Put simply, "when it comes to claim preclusion, a request for declaratory relief neither giveth nor taketh away. The declaratory claim on its own typically will not preclude future claims involving the same circumstances (as noted, issue preclusion may still apply to any declaration the court issues)." *ASARCO, L.L.C. v. Montana Res., Inc.*, 858 F.3d 949, 956 (5th Cir. 2017) (citing *Kaspar Wire Works, Inc. v. Leco Eng'g & Mach., Inc.*, 575 F.2d 530 (5th Cir. 1978). To be sure, however, "in a case involving both declaratory claims and ones seeking coercive relief, the former will not serve as an antidote that undoes the preclusive force that traditional claims would ordinarily have." *Id.*

Similarly, an exception to the rule of res judicata exists when a party requests "supplemental relief under [Texas's] declaratory judgment act." *State v. Anderson Courier Serv.*, **2**22 S.W.3d 62, 65 (Tex. App.—Austin 2005) (citing Tex. Civ. Prac. & Rem. Code Ann.§ 37.011 ("Further relief based on a declaratory judgment or decree may be granted whenever necessary or proper.")).  This is true "'even though such relief could have been granted in the original action' unless such application was actually considered and denied in the original action." *Jay Petroleum, L.L.C. v. EOG Res., Inc.*, 332 S.W.3d 534, 540 (Tex. App.—Houston [1st Dist.] 2009) (quoting *Anderson Courier Serv., 222* S.W.3d at 66.  As explained by one Texas court:

> [T]he rationale for this apparent departure from the usual rule of res judicata is that the losing party in a declaratory judgment action can normally be expected to recognize the rights declared by the judgment and act accordingly, but that if he fails to do so, the court should have ample power to enforce the judgment by

---

[20] At oral argument, counsel for Great West conceded that its list of cases did not include any in which the first action had sought only declaratory relief.  Tr. 84:5-8.

subsequent coercive orders, whether or not such relief was sought in the original
action.

*Jay Petroleum, L.L.C.*, 332 S.W.3d at 540 (quoting *Valley Oil Co. v. City of Garland*, 499 S.W.2d

333, 336 (Tex. Civ. App.—Dallas 1973)).

Based on this guidance, this Court holds that res judicata does not bar MVT's claims here.

MVT limited its 2015 action against Great West to declaratory judgment only and sought no other

coercive relief until filing the instant action.[21]

### 2.   *Great West Breached its Duty to Defend*

Great West stipulates that MVT tendered to it the defense of the *Parada* lawsuit on October

28, 2013.  Resp. 10.  Nonetheless, Great West insists that MVT "withdrew" its tender three days

later and did not re-tender the defense of the *Parada* claim and demand coverage until May 15,

2015, at which time Great West accepted the tender and launched its defense of MVT.  *Id.* at 10-

12.  Thus, in Great West's view, it was never in breach of its duty to defend.  *Id.*  MVT replies that

it never withdrew its initial tender and the best evidence of it not having done so is that Great West

expressly and formally denied coverage.  In other words, says MVT, if the tender had in fact been

withdrawn, Great West would have had no occasion to issue any coverage determination at all.

Reply 4-5.[22]

---

[21] The parties' Joint Stipulation for Dismissal in the 2015 declaratory judgment action between them provides a
separate and alternative basis for denying Great West's res judicata claim.  In that document, the parties specifically
agreed that "[t]his dismissal shall *not* operate as a resolution of *related disputes or related potential disputes*."  Jt.
Stip. For Dismissal, ECF 6, *MVT Services, LLC dba Mesilla Valley Transportation v. Great West Cas. Co.*, No. EP-
15-CV-136-PRM (W.D. Tex. May 12, 2015) (emphasis added).

[22] MVT alternatively asserts that, under Texas law, once tender was made on October 28, 2013, MVT could not
withdraw it as a matter of law.  Because the Court is rejecting Great West's withdrawal-of-tender argument on other
grounds, however, the Court does not express an opinion as to whether Texas law would prohibit withdrawal in these
circumstances.

As explained below, the Court concludes that MVT is entitled to a finding as a matter of law that Great West breached its contractual duty to defend.  The admissible summary judgment evidence does not create a genuine fact issue that MVT ever withdrew its tender or that Great West's denial of coverage was not in violation of the WC Policy.  The Court is of the opinion that the record evidence does not *at all* support the notion that "[e]ffectively, MVT withdrew its tender October 31, 2013."  Resp. 5, 10.  Instead, the evidence demonstrates that (1) MVT tendered to Great West the defense of the *Parada* claim on October 28, 2013, (2) everyone on both sides then acted and communicated in accordance with their *mistaken* belief that the *Parada* claim was not covered because the accident occurred the day after the WC Policy expired, and (3) Great West six weeks later formalized its denial of the claim in David Schubert's letter of December 10, 2013, which (a) made clear that the tendered claim was being denied *solely* on the basis that the policy had been terminated the day before the double-fatality, and (b) made no mention whatsoever of any withdrawal effort by MVT.

To this evidence the Court can add Tammy Koopman's and Cindy Kallsen's affidavits filed in the *Parada* case in which both affiants swore that Great West had since determined that its WC Policy extended coverage through September 16, 2013, the day after the double-fatality.  *See* Mot., Exs., 3-E and 3-F.  The peak of the evidence takes the form of David Schubert's letter to MVT dated May 22, 2015.  In that letter, Schubert acknowledged that Great West's sole original basis for denial was limited to the WC Policy having expired, acknowledged that Great West's denial-of-coverage decision was in error, and conveyed that Great West had changed its coverage position and would join in defending MVT in the *Parada* action.  Mot., Ex. 2-B.  The affidavits and the letter share something else in common:  they are silent on any withdrawal effort by MVT.

Indeed, at no time in any evidentiary document before the Court did *anyone* so much as mention, suggest, or even hint that MVT "withdrew" its October 28th tender.

Nonetheless, in its effort to manufacture a fact question in the imposing shadow of this evidence, Great West points to four record clues.  The first is an email sent from MVT's outside counsel, Steven Blanco, to Luis Garcia, an employee of Plaintiff, on October 29, 2013, in which Blanco opines that the *Parada* lawsuit was "not workers' compensation."  Resp., Ex. 1(F).  The second clue is an email exchange on October 31, 2013, involving a question from Great West and a response from MVT:

> Great West: [Regarding *Parada* lawsuit] Raul – has this been reported to Crum and Forester [sic].
>
> MVT: This have [sic] been reported to them from day one, we are just keeping you in the loop.  If you don't want us to keep you informed let me know, thank you.

Resp., Ex. 1(G).  According to Great West, these two clues establish that MVT "effectively" withdrew the *Parada* tender.  Resp. 5.

For clues three and four, Great West then refers to its August 11, 2014, claim log entry and letter of the same date.  Resp., Exs. 1(O), 1(P).  The claim log entry states "I spoke with Todd Silberman's [phone number omitted] who confirmed Crum and Forster are dealing with the claims and defense + [MVT] requesting closure of this file."  Resp., Ex. 1(O).  The letter advised MVT that the "liability portion of this claim has been closed with no payment being made."  Resp., Ex. 1(P).  Great West suggests that the log entry and the letter confirmed in 2014 that MVT withdrew its tender back in 2013.  Resp. 6, 10.

The Court concludes that none of these clues, viewed together or in isolation, creates a genuine factual dispute as to whether MVT withdrew its tender.  To begin, Blanco's internal communication to MVT sharing his view that *Parada* was not a workers' compensation claim is

virtually irrelevant.  The email doesn't foreclose the strong possibility that Blanco was operating under the mistaken impression that the WC Policy had expired prior to the wreck.  More important, the email is silent on anything having to do with withdrawing the claim submitted to Great West. Finally, Blanco's communication was not sent to Great West and came into Great West's possession only years later in discovery.

Of similar *de minimis* relevance is MVT's statement about keeping Great West "in the loop" and its offer to cease doing so.  There was no affirmative action on behalf of MVT withdrawing the *Parada* tender nor any evidence of Great West's acknowledgement that such a withdrawal had taken place.  That email exchange merely reflects an insured keeping an insurance company informed about the insured's interactions with another insurance company.  If this email exchange has any evidentiary value at all, it is to bolster the view that MVT and Great West were operating under the mutual mistaken belief that the WC Policy had expired.  Indeed, the email demonstrates that MVT's expectation that Great West would deny coverage was so strong that MVT had already *also* tendered the *Parada* claim to its excess carrier.

The log entry and follow-up letter offer no help in the Court's analysis.  By the time those documents were created, Great West's official denial of coverage was eight months old, C&F had long ago accepted MVT's tender, and the *Parada* lawsuit was in full swing.  The log entry and letter are completely silent about withdrawal and show only that MVT was still under the belief that no coverage existed per Great West's coverage denial.

In sum, the record evidence that Great West has pointed to is manifestly insufficient to create a genuine fact issue as to whether MVT withdrew its initial tender.  Instead, the Court views this issue as one on which the facts are so settled and so immune from dispute among reasonable minds that a jury is not required to find them.  "When opposing parties tell two different stories,

37

one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts." *York v. City of Las Cruces*, 523 F.3d 1205, 1210 (10th Cir. 2008) (quoting *Scott v. Harris*, 550 U.S. 372, 380 (2007)).  Consequently, the Court concludes that the undisputed material facts demonstrate that (1) MVT tendered (and never withdrew) the *Parada* lawsuit on October 28, 2013, and (2) Great West erroneously denied coverage on December 10, 2013.  Therefore, the Court concludes that Great West breached its duty to defend under the WC Policy as a matter of law on December 10, 2013.

### 3.  Damages

Determining whether MVT is entitled to summary judgment on the damages it seeks is a tougher task.  MVT requests damages in three forms:  (1) the $250,000 deductible it paid to C&F as part of invoking coverage under that policy, (2) the $250,000 of its own money that it contributed toward the settlement of the *Parada* action, and (3) $41,476.84 it paid to Blanco for his participation in MVT's defense in *Parada*.  Mot. 23-24.  MVT insists that it would not have had to pay any of those amounts had Great West timely accepted coverage back in October 2013 when MVT first tendered to it the *Parada* claim.  *Id.*

In Texas, "[i]t is well settled that once an insurer has breached its duty to defend, the insured is free to proceed as [it] sees fit; [it] may engage [its] own counsel and either settle or litigate, at [its] option." *Yowell v. Seneca Specialty Ins. Co.*, 117 F. Supp. 3d 904, 908 (E.D. Tex. 2015) (quoting *Ideal Mut. Ins. Co. v. Myers*, 789 F.2d 1196, 1200 (5th Cir. 1986)).  Therefore, "an insurer that breaches its duty to defend forfeits its right to conduct the insured's defense." *Id.* (citing *Ideal Mut. Ins. Co.*, 789 F.2d at 1200).  Generally, then, Great West's breach might allow for this Court to fully grant judgment in MVT's favor on all three components of its requested damages.  As explained below, however, and as the Court forecasted during oral argument, there

are genuine and material factual disputes as to whether MVT still may have invoked the C&F policy (thereby triggering the deductible) and still may have contributed directly to the *Parada* settlement.  As for the attorney fees, the Court concludes that MVT is entitled to damages in the amount of those fees that MVT can prove at trial were related to Blanco's direct participation in the *Parada* tort defense.

a.  <u>C&F Deductible and Settlement Contribution to *Parada*</u>

MVT argues that these components of its damages claim are recoverable for one primary reason:  it lost the protection of the Exclusive Remedy when Great West breached its duty to defend.  Mot. 22-24.  In MVT's view, because the C&F Policy "provided employers liability coverage, not workers' compensation coverage," neither MVT nor C&F could invoke the Exclusive Remedy.  Mot. 23.  That inability subjected MVT to an ordinary tort litigation forum in *Parada*, thereby substantially increasing MVT's potential exposure as compared to the statutory benefits otherwise available under the workers' compensation regime.  *Id.* at 23.   In response, Great West denies that MVT is entitled to summary judgment as to either component of damages.  First, Great West maintains that it "did not control or dictate MVT's defense in the *Parada* Lawsuit," and MVT could have invoked the Exclusive Remedy on its own at any time.  Resp. 14.  Great West next asserts that the Exclusive Remedy "would not have provided an absolute bar to the *Parada* plaintiffs' recovery or suit" because of the presence of the gross negligence claim.  *Id.* at 15.  Lastly, Great West suggests that MVT would have invoked the C&F Policy anyway, which would have triggered MVT's contractual duty to pay the $250,000 deductible.  *Id.* at 15-16.

After scrutinizing the parties' evidence and arguments, the Court lands somewhere in the middle.  Great West's wrongful failure to accept the initial tender in October 2013 doubtlessly shaped the posture of the *Parada* litigation and artificially inflated the litigation threat it posed to

MVT.  The evidence makes clear beyond debate that Great West's wrongful denial of coverage *at the very least* caused a substantial delay in MVT's ability to attempt to invoke the Exclusive Remedy.  But it is also clear that MVT developed information (likely in the first few months of 2015) that caused it to believe that the *Parada* claim was in fact covered by Great West's WC Policy.  After all, MVT certainly did not wait for Great West to change its coverage position before seeking to invoke the Exclusive Remedy.  We need look no further than the sequence of actions taken by MVT beginning May 12, 2015, a sequence intended to persuade the *Parada* court first to continue the trial and later to abate the entire lawsuit in favor of the matter proceeding before the Division of Workers' Compensation.  MVT initiated this sequence in *Parada* on May 12, 2015, the same day that MVT sued Great West in the declaratory judgment action.  That was also three days *before* Caroline Ford sent her letter on MVT's behalf to David Schubert advising him and Great West of the filing of the declaratory judgment action and the demand for coverage.  Mot., Ex. 2-A.  And it was a full ten days before Schubert's May 22, 2015, response letter advising that Great West had changed its coverage position and would cover the *Parada* claim under the Policy. *Id*., Ex. 2-B.  So although MVT insists in this litigation that it was powerless under Texas law to invoke the Exclusive Remedy, its own actions in *Parada* call that theory into question.

On the other hand, the Court wrestles with why Great West – the party-in-breach – should benefit just because MVT perhaps could have realized sooner that its own worker's compensation insurer had wrongfully denied it coverage.  Why should the breaching party benefit because MVT waited until it did to attempt to invoke the Exclusive Remedy and file the declaratory judgment action?  Why should Great West's breach be excused only because it may have been theoretically possible for MVT to attempt to invoke the Exclusive Remedy a few months before the *Parada* trial instead of four weeks?  Who's to say the trial judge would have made a different decision

even then?  Why should Great West escape paying *something* for its wrongful denial of coverage that doubtlessly exposed its insured to liability vastly greater than it ever should have been had its insurer done what it promised to do?

Had Great West back in October 2013 accepted the tender and, on MVT's behalf, invoked the Exclusive Remedy, there is a very strong likelihood that *Parada* would have been resolved without protracted litigation.  Had Great West honored its obligation back in October 2013, all that would have remained of *Parada* would have been what most agree was a tenuous claim of gross negligence.  And had that been the lone claim remaining in the state trial court after the Exclusive Remedy was invoked, that claim no doubt would have been subjected to vigorous pretrial motion practice seeking to tie up that loose end and neutralize that litigation threat.  But as long as the *simple* negligence claims were still alive in the state court – which claims all agree presented a much more dire threat – MVT (and C&F) did not have the same motivation to single out the gross negligence claim and defend against it separately.

The questions the Court has asked itself and the scenarios it has hypothesized are food for thought but not much more, because this Court is conducting only summary judgment review. This Court does not have sufficient evidence before it to decide as a matter of law that Great West's breach irrevocably denied MVT its choice-of-forum and thereby raised the stakes of the *Parada* lawsuit so high as to cause MVT to pay $500,000 that it otherwise would not have.  Those questions will need to be decided by the jury.

Similarly, this Court does not have before it any evidence from the *Parada* case to make an independent judgment about whether the gross negligence claim would have survived a motion for summary judgment, then survived a motion for directed verdict at trial, and then prevailed before a jury.  Instead, MVT has only provided the Court with its *Parada* attorney's opinion that

the gross negligence claim was "weak" and that he had filed a motion to exclude an expert witness on whose shoulders the viability of that claim may have rested. Reply 11; Resp., Ex. 1(T). The Court can only speculate what the state judge would have done with the motion to exclude, a motion for summary judgment, or a motion for directed verdict, much less what the jury would have done had the gross negligence claim been submitted to it. Consequently, on this evidentiary record, the Court cannot say *as a matter of law* that the gross negligence claim posed no threat whatsoever to MVT. At a point at which the Court must view the evidence in the light most favorable to Great West and indulge all inferences in its favor, this evidentiary uncertainty precludes the Court from finding by a preponderance of evidence that MVT never would have invoked the C&F policy or contributed extra money to the *Parada* settlement. Those questions, too, must await resolution by a jury.

In hindsight, the damages portion of this motion for summary judgment would have been easier to decide if the *Parada* case had ended differently. For example, if that case had not settled and instead had gone to trial, we would *know* whether the jury had held MVT liable for ordinary negligence and in what amount. We would *know* how the trial judge ruled on the motion to exclude the expert witness, whether the gross negligence claim was permitted to proceed to trial, whether it survived a motion for directed verdict, and whether the jury found MVT to be grossly negligent and any damages it awarded as a result. In those scenarios, MVT's damages arising from Great West's breach of its duty to defend would be more easily identifiable and quantifiable. As it is, we are left to infer, to deduce, and ultimately to decide which of those results would be more likely than not. Faced with an evidentiary record as terse and unsettled as the one before it, the Court must commit those questions to a jury instead of arrogating them to itself.

Attorney's Fees[23]

As to Blanco's fees, however, the record does contain sufficient evidence to enable the Court to decide that MVT is entitled to that portion of his fees that MVT can prove at trial were related to defending the *Parada* case.  By wrongfully denying coverage, Great West lost its ability to control, influence, or object to the manner in which MVT chose to staff its defense.  After all, if MVT did not have an excess carrier and had been forced to pay full freight for its defense, Great West would have been hard-pressed as the breaching party to argue that MVT overstaffed or overpaid for its own defense.  The same is true with the approach MVT pursued here, relying for its defense on a combination of C&F-funded counsel and a second counsel that MVT itself selected.

In its effort to quarrel with MVT's demand that Blanco's fees be reimbursed as a consequence of its breach, Great West relies on cases that examined whether an insured can be reimbursed for the fees of its own independent counsel where an insurer merely *reserved its rights*. *See* Resp. 11 (citing *N. Cty. Mut. Ins. Co. v. Davalos*, 140 S.W.3d 685 (Tex. 2004), *Hous. Auth. of City of Dallas, Tex. v. Northland Ins. Co*., 333 F. Supp. 2d 595 (N.D. Tex. 2004), and *Graper v. Mid-Continent Cas. Co*., 756 F.3d 388 (5th Cir. 2014)).  The Court has read each of those cases and finds no rule or reasoning that is portable to the present case – in which the insurer *wrongfully denied* coverage only to do an about-face when confronted eighteen months later with irrefutable proof of its earlier mistake.

As already stated, *see supra* at 38, once an insurer breaches its duty to defend, the insured is free to retain independent counsel.  Given that Great West breached its duty on October 28,

---

[23] As discussed above, the Court rejects Great West's tender-withdrawal-retender defense to breach.  The same reasoning, therefore, causes the Court to reject Great West's argument that, if any of Blanco's fees are assessed against it, the onset date of those fees can be no earlier than May 15, 2015.  Instead, the jury will be permitted to consider the full date range of Blanco's billings in deciding which of them were reasonable.

2013, and remained in breach until it accepted coverage on May 15, 2015, Blanco's fees incurred in the interim are fully recoverable subject to a reasonableness limitation. Furthermore, given that the *Parada* suit was on the precipice of trial before Great West finally and belatedly decided to fulfill its duty to defend, Great West cannot now argue that Blanco's participation after that date was not necessary. By waiting as long as it did to begin to fulfill its duty, Great West was in no position to criticize MVT for the manner in which it staffed its defense theretofore nor to insist on a change in personnel thereafter. "Having thus waived its right to defend the suit, such right was lost forever . . . ." *Rhodes v. Chicago Ins. Co., a Div. of Interstate Nat. Corp.*, 719 F.2d 116, 120 (5th Cir. 1983) (quoting *Witt v. Universal Automobile Insurance Co.*, 116 S.W.2d 1095, 1098 (Tex. Civ. App.—Waco 1938, writ dism'd). Indeed, the undisputed facts demonstrate that, upon taking over MVT's defense in *Parada*, Great West acquiesced in Blanco's continued participation on the trial team. Resp., Ex. 1(Y).

Great West next argues that because MVT has not paid Blanco's fees, MVT cannot recover them. Resp. 12. Great West relies on *Coreslab Structures (Texas), Inc. v. Scottsdale Ins. Co.*, 496 S.W.3d 884 (Tex. App.—Houston [14th Dist.] 2016) for this proposition.[24] This reliance is misplaced. *Coreslab* merely held that an insured may not recover defense costs from an insurer when those costs have already been paid by another insurer. *Id*. at 889-91. There is no evidence before the Court that C&F reimbursed MVT for any amount of Blanco's fees, and all the evidence is to the contrary. Consequently, the Court does not find *Coreslab* persuasive. The Court is aware of no other law that would bar MVT from being awarded damages for Blanco's fees unless it proves that it has already paid them. The Court thus rejects this argument.

---

[24] Great West also argues that this case bars penalties under the PPCA when fees have yet to be paid by the insured. The Court fully discusses this issue below in Section VII.B.

Great West also challenges the reasonableness of Blanco's fees, which it is permitted to do. *See United Space All.*, 378 F.3d at 490 (damages resulting from breach of duty to defend must be reasonable). Specifically, Great West argues that MVT has not pointed to evidence establishing that the fees are reasonable. Resp. 13-14. Great West asserts that some of Blanco's invoices include work not directly tied to the defense of the *Parada* lawsuit, i.e., general coverage work. The Court agrees that MVT's evidence does not conclusively prove that every hour reflected in Blanco's billings stemmed directly from his participation in the *Parada* tort defense. Notably, Blanco's affidavit says nothing about reasonableness. *See Rohrmoos Venture v. UTSW DVA Healthcare, LLP*, 578 S.W.3d 469, 496 (Tex. 2019) (reasonableness is a question for fact finder and lodestar method is the applicable standard when objective calculation of reasonable hours worked times a reasonable rate can be employed). In addition, the summary judgment evidence shows that two other attorneys billed for identical appearances as Blanco, which when viewed in the light most favorable to Great West, creates a fact issue of reasonableness. Resp., Exs. 1(Z), (AA). Since the reasonableness of fees is generally a question of fact for the jury and conflicting evidence has been presented to the Court, the Court finds that a genuine issue of material fact exists on that question. Therefore, the Court grants summary judgment to MVT as to the *award* of Blanco's fees but it will be up to the jury to determine the amount.

### B. Prompt Payment of Claims Act

In addition to the request for Blanco's fees, MVT argues that Great West must pay an additional 18% interest on the final amount awarded for failing to comply with Chapter 542 of the Texas Insurance Code, otherwise known as the Prompt Payment of Claims Act. Mot. 24-26. Specifically, MVT asserts that it made a cognizable claim under the Act, Great West failed to respond to that claim, and Great West is therefore required to pay the statutory penalty. *Id.* Great

West counters that MVT failed to make a proper claim under the Act because MVT did not establish that Blanco's fees were reasonable.  Resp. 20.[25]  The Court concludes that MVT is entitled to summary judgment on the Chapter 542 for the reasons that follow.

Texas imposes several obligations on an insurer who is "liable for a claim under an insurance policy."  Tex. Ins. Code Ann. § 542.051 *et seq.* [hereinafter "Prompt Payment Claims Act" or "PPCA"].  These obligations include how and when an insurer must respond to[26] and pay a claim.  *Id.*[27]  An insurer becomes liable for the amount of the claim and faces a potential statutory penalty of 18 percent per annum for its failure to comply with the PPCA.  *Id.*[28]

For this Court to grant summary judgment in MVT's favor on this Count, MVT must establish that: "(1) a claim was made under an insurance policy, (2) [Great West] is liable for the claim, and (3) [Great West] failed to follow one or more sections of the prompt-payment statute with respect to the claim."  *Lyda Swinerton Builders, Inc. v. Oklahoma Sur. Co.*, 903 F.3d 435, 450 (5th Cir. 2018) (quoting *United Nat. Ins. Co. v. AMJ Investments, LLC*, 447 S.W.3d 1, 13 (Tex. App.—Houston [14th Dist.] 2014, pet. dism'd)).

---

[25] Great West also argues that this claim is barred by res judicata.  Resp. 19-20.  But as explained in section VII(A)(1)(a), res judicata provides Great West no relief in the instant case.

[26] *See id*. § 542.055 ("Not later than the 15th day or, if the insurer is an eligible surplus lines insurer, the 30th business day after the date an insurer receives notice of a claim, the insurer shall: (1) acknowledge receipt of the claim; (2) commence any investigation of the claim; and (3) request from the claimant all items, statements, and forms that the insurer reasonably believes, at that time, will be required from the claimant.")

[27] *See id*. § 542.058 ("Except as otherwise provided, if an insurer, after receiving all items, statements, and forms reasonably requested and required under Section 542.055, delays payment of the claim for a period exceeding the period specified by other applicable statutes or, if other statutes do not specify a period, for more than 60 days, the insurer shall pay damages and other items as provided by Section 542.060.").

[28] *See id*. § 542.060 ("if an insurer that is liable for a claim under an insurance policy is not in compliance with this subchapter, the insurer is liable to pay the holder of the policy or the beneficiary making the claim under the policy, in addition to the amount of the claim, interest on the amount of the claim at the rate of 18 percent a year as damages, together with reasonable and necessary attorney's fees.").

To begin, an insured's claim for a defense against a third-party constitutes a cognizable claim under the PPCA. *See Lamar Homes, Inc. v. Mid–Continent Casualty Co.*, 242 S.W.3d 1, 17, 20 (Tex. 2007) (observing that the "right to a defense benefit under a liability insurance policy is a 'first-party claim' within the statute's meaning"). And the undisputed facts show that on October 28, 2013, MVT tendered *Parada* to Great West for defense under the Policy and, on December 10, 2013, Great West wrongfully denied coverage, therefore establishing *liability* under the PPCA as a matter of law. *Trammell Crow Residential Co. v. Va. Sur. Co.*, 643 F. Supp. 2d 844, 859 (N.D. Tex. 2008) ("The court concludes that *Lamar Homes* is best understood as holding that an insurer becomes liable under the statute when it wrongfully rejects its defense obligation").[29] MVT then completed its claim under the PPCA when it submitted Blanco's fees to Great West on September 1, 2015, fees that Great West still has not paid.[30] In sum, because this Court finds Great West liable for Blanco's fees due to its breach of its duty to defend and because Great West has not paid and refuses to pay his fees, MVT is entitled to penalty interest as a matter of law.

The Court reaches this conclusion even though the Court does not have before it any evidence that MVT has itself paid Blanco. As discussed *supra* at 44, Great West relies on *Coreslab*

---

[29] *See also Higginbotham v. State Farm Mut. Auto. Ins. Co.*, 103 F.3d 456, 461 (5th Cir. 1997) ("insurance company's good faith assertion of defense does not relieve the insurer of liability for penalties for tardy payment, as long as the insurer is finally judged liable") ("[I]f an insurer fails to pay a claim, it runs the risk of incurring this 18 percent statutory fee and reasonable attorneys' fees, . . . [and] [the insurer] lost when it was found liable for breach of contract."); *Barbara Techs. Corp. v. State Farm Lloyds*, 589 S.W.3d 806, 822 (Tex. 2019), reh'g denied (Dec. 13, 2019) ("This is not to say that a rejected claim can never trigger damages under the TPPCA; to the contrary, if an insurer later accepts a claim after initially rejecting it, or if an insurer is adjudicated liable for a claim it rejected, TPPCA deadlines and prompt pay requirements will apply.").

[30] *See Lamar Homes, Inc.*, 242 S.W.3d at 19 (Tex. 2007) ("when the insurer wrongfully rejects its defense obligation, the insured has suffered an actual loss that is quantified after the insured retains counsel and begins receiving statements for legal services. These statements or invoices are the last piece of information needed to put a value on the insured's loss. *See* Tex. Ins. Code § 542.056(a). And when the insurer, who owes a defense to its insured, fails to pay within the statutory deadline, the insured matures its right to reasonable attorney's fees and the eighteen percent interest rate specified by the statute.").

*Structures* for the proposition that penalties cannot be recovered by the insured under the PPCA when defense fees are not paid (or have not been paid) by the insured.  Resp. 12 n.13.  This argument is without merit.  In that case, the Texas Court of Appeals reviewed a district court's grant of summary judgment.  There, the defendant made two arguments in its motion for summary judgment on the plaintiff's PPCA claim: **"**(1) [it] always paid its share of the defense costs within sixty days of its receipt of each attorney's-fees invoice; and (2) [the plaintiff] never paid any attorney's fees bill for the defense costs in the Underlying Lawsuits."  *Coreslab*, 496 S.W.3d at 892.  In ruling for the defendant, the "trial court granted summary judgment without specifying the grounds upon which it relied . . . ."  *Id*. at 891. And on appeal, the plaintiff did "not expressly challenge both parts of the second summary-judgment ground asserted against its section 542.060 claim or present argument as to why the trial court erred in granting summary judgment on these grounds."  *Id*.  Therefore, the Texas Court of Appeals affirmed because the plaintiff failed to challenge "all independent summary-judgment grounds upon which the trial court granted summary judgment as to its claim under Insurance Code section 542.060."  *Id*. at 892.  It is clear that *Coreslab* does not stand for Great West's proposition and Great West fails to cite any other authority on this point.  Consequently, the Court rejects this argument and finds MVT is entitled to penalty interest as a matter of law.

Nevertheless, Great West still argues that it owes no duty under the PPCA and that MVT's claim is infirm because Blanco's fees are unreasonable.  Resp. 20.  The Court rejects this argument, too.  Great West clearly violated the PPCA when it breached its duty to defend and failed to pay Blanco's fees within the statutory time period after the September 1, 2015, tender.  There is no exception of which the Court is aware – and no authority to which the Court has been cited – that completely relieves an insurer from compliance with the PPCA if it disagrees with the amount of

costs.  Consequently, MVT is entitled to penalty interest on the "reasonable" amount of fees to be found by the jury.

## VII.    CONCLUSION

For the foregoing reasons, the Court will grant summary judgment to MVT as follows:

(1)  As to Count One (breach of contract):  MVT is entitled to summary judgment on the elements of (a) existence of a valid contract, (b) performance by MVT, (c) Great West's duty to defend arising on October 28, 2013, and (d) Great West's breach of its duty to defend.  MVT is also entitled as a matter of law to a reasonable amount of defense costs (Steven Blanco's fees).

(2)  As to Count Two (PPCA):  Great West violated the Prompt Payment of Claims Act in an amount to be determined at trial and is entitled to statutory penalty interest on that amount.

The Court will deny MVT's Motion for Summary Judgment in all other respects.

**IT IS THEREFORE ORDERED** that MVT's Motion [ECF 52] is **GRANTED IN PART** and **DENIED IN PART.**

**SO ORDERED.**

_____
**THE HONORABLE GREGORY J. FOURATT**
**UNITED STATES MAGISTRATE JUDGE**
***Presiding by Consent***