UNITED STATES DISTRICT COURT
DISTRICT OF NEW MEXICO

MVT SERVICES, LLC d/b/a/ MESILLA
VALLEY TRANSPORTATION,

    Plaintiff,

v.                                        Civ. No. 18-1128 GJF/KRS

GREAT WEST CASUALTY COMPANY,

    Defendant,

## MEMORANDUM OPINION AND ORDER

THIS MATTER is before the Court on Defendant Great West Casualty Company's "Motion for Reconsideration Associated with Court's Memorandum Opinion and Order of June 19, 2020." ECF 102 ("Motion").[1] The Motion is fully briefed. *See* ECFs 107 (Response), 108 (Reply). For the following reasons, the Court will **DENY** the Motion.

### I. LEGAL STANDARD FOR MOTIONS TO RECONSIDER

While the Federal Rules of Civil Procedure do not specifically provide for motions for reconsideration, Rule 54(b) provides that any order or decision "that adjudicates fewer than all claims . . . may be revised at any time before the entry of a judgment adjudicating" all claims. Fed. R. Civ. P. 54(b). In this District, Rule 54(b) has been interpreted to provide the reviewing court the discretion to "select the standard of review for a motion to reconsider an interlocutory order." *Kruskal v. Martinez*, 429 F. Supp. 3d 1012, 1024 (D.N.M. 2019). For its part, the Tenth Circuit has found instructive the standard used to review a motion made under Rule 59(e). *See Ankeney v. Zavaras*, 524 Fed. Appx. 454, 458 (10th Cir. 2013) (unpublished). In the Rule 59(e) context, there are three circumstances in which granting a motion to reconsider is appropriate; first, where

---

[1] For ease of reference, this opinion refers to the parties as "MVT" and "Great West."

there is an intervening change in the controlling law; second, when there is new evidence that was previously unavailable; and third, where there is a need to correct clear error or prevent manifest injustice.  *Id.* (citing *Servants of the Paraclete v. Does*, 204 F.3d 1005, 1012 (10th Cir. 2000)).

A motion to reconsider is also appropriate "where the court has misapprehended the facts, a party's position, or the controlling law," but such motions are "not appropriate to revisit issues already addressed or advance arguments that could have been raised in a prior briefing."  *Servants of the Paraclete*, 204 F.3d at 1012.  "Absent extraordinary circumstances, … the basis for the second motion must not have been available at the time the first motion was filed."  *Id.; see also Matosantos Com. Corp. v. Applebee's Int'l, Inc.*, 245 F.3d 1203, 1209 n. 2 (10th Cir. 2001) (holding that a court, in reviewing a motion to reconsider, need not address new arguments raised by the parties); *United States v. Castillo-Garcia*, 117 F.3d 1179, 1197 (10th Cir. 1997) (emphasizing that "arguments raised for the first time in a motion for reconsideration are not properly before the court and generally need not be addressed").

## II.     ADMISSIBILITY OF GREAT WEST'S EXHIBITS 1(C) AND 1(L)

Great West reasserts that its Exhibits 1(C) [OEP First Report of Injury] and 1(L) [Texas Worker's Compensation's December 12, 2013 decision in *Price*] are admissible under Federal Rule of Evidence 803(6), the business records exception to the hearsay rule.  *See* Mot. 3-4.  The Court again disagrees, for the reasons it articulated in its Memorandum Opinion and Order ("MOO") [ECF 100].  *See* MOO 17, 19-20.  Just because a document created by someone else has been collected in a business's files does not automatically render that document a "business record" under Rule 803(6).  That rule requires a foundation for admissibility that neither David Hawkins' affidavit nor Great West's briefing has supplied.  While the Court can imagine other

avenues of admissibility for these exhibits, the only avenue asserted by Great West in its original briefing was the business records exception.

Perhaps realizing that its arguments for admissibility were too narrow, Great West now argues for the *first* time that the two exhibits are not hearsay at all because Great West "did not offer [them] for the truth of the matters espoused therein" but instead only "for purposes of notice." Mot. 4. Because Great West could have made that argument in its original briefing, however, the Court will not permit it to do so now. *See Servants of the Paraclete*, 204 F.3d at 1012; *Matosantos Com. Corp.*, 245 F.3d at 1209 n. 2; *United States v. Castillo-Garcia*, 117 F.3d at 1197.

### III.  MVT'S ALLEGED "WITHDRAWAL OF TENDER"

Great West contends that the Court's MOO both misapprehended the summary judgment evidence and did not construe it in the light most favorable to Great West as the non-movant. *See* Mot. 7-9. In light of this contention, the Court re-examined the entire evidentiary record, paying special attention to Great West's Exhibits 1(G), 1(I), 1(O), 1(P), and 1(U). The Court again construed the evidence in the light most favorable to Great West and indulged all reasonable inferences in its favor. Even after this painstaking exercise, however, the Court remains convinced that there is no *genuine* factual dispute in the summary judgment evidence that would support a finding that MVT withdrew its October 28, 2013 tender.[2]

To its analysis set forth in the MOO, the Court adds the following comments in response to Great West's criticism of the Court's treatment of certain evidence. *See* Mot. 7-9. One of the Court's purposes in referencing in the MOO the Koopman and Kallsen affidavits was to illustrate that the affidavits were silent on MVT ever having withdrawn its tender. The same is true for the

---

[2] The Court's MOO also held that Great West was collaterally estopped from disputing that its duty to defend MVT arose on October 28, 2013, "and persisted without interruption thereafter." *See* ECF MOO at 32. The instant motion does not contest that portion of the Court's decision.

3

Court's citation to David Schubert's December 2013 and May 2015 conflicting coverage letters: they, too, were silent on the withdrawal issue. Nonetheless, Great West urges the Court to consider the time pressure that Mr. Schubert could have been feeling in May 2015 with his employer's insured facing an imminent trial date in *Parada*. *See* Mot. 7-8. The Court isn't sure what it is supposed to do with that argument, for it all but asks the Court to rewrite Mr. Schubert's second letter and append to it a different rationale than the one it used. Whether Mr. Schubert meant to (but forgot to) include in his May 2015 letter a reference to MVT having reasserted a tender it previously withdrew, or whether he would have included such a reference if he had enjoyed the luxury of more time or less pressure, or whether any number of other circumstances arose, the undisputed fact remains that Mr. Schubert's May 2015 letter was completely silent with respect to MVT having earlier withdrawn the tender it was now reasserting. The Court further notes that whatever pressure surrounded Mr. Schubert's letter-writing in May 2015 does not appear to have existed in December 2013 when he explained why Great West was denying coverage, with no mention whatsoever of MVT having withdrawn its tender.

Great West also asks the Court to reconsider Great West's Exhibit 1(I) and all that it might portend in the light most favorable to Great West. *See* Mot. 8-9. Having done so, the Court again concludes that there is nothing in Exhibit 1(I), whether viewed by itself or in combination with Exhibits 1(G), 1(O), 1(P), and 1(U), that speaks to the issue of whether MVT withdrew its October 2013 tender. Indeed, by way of example, paragraph 5 of Exhibit 1(I) featured Mr. Schubert memorializing on November 6, 2013, that MVT's in-house counsel expressed that "MVT would have no problem with Great West *issuing a flat denial of coverage* but [MVT's in-house counsel] believe[s] that at some point . . . there will be an attempt to get at the Great West coverage as well so [MVT's in-house counsel] want[s] Great West to have the opportunity to be fully up to speed

on the case." ECF 64-1 at 12 (Exhibit I to Great West's Supp. Appx.) (emphasis added). Even indulging every reasonable inference of this excerpt (and the rest of the exhibit) in Great West's favor, the Court concludes that the exhibit simply does not address the issue of whether MVT *withdrew* the tender it made just nine days earlier. To read such an inference into this electronic mail would amount to the Court rewriting it and manufacturing a fact issue where none currently exists. In the Court's view, a reasonable factfinder could construe the excerpted paragraph only in support of the conclusion that Great West *denied* coverage as opposed to MVT withdrawing its request for the same.

## IV. DAMAGES

Great West next takes issue with the manner in which the Court explained its view of the evidence associated with MVT's claim that Great West's breach caused MVT to unnecessarily invoke another policy and to pay extra money to resolve the *Parada* case. *See* Mot. 9-10. Because the Court *denied* MVT's motion for summary judgment on those grounds, the Court has no occasion to revisit its explanation. *See* MOO, 38-42. The Court made no findings related to those two components of damages but instead committed them to an eventual jury's consideration. *Id.*, 41.

## V. TEXAS PROMPT PAYMENT OF CLAIMS ACT

Finally, Great West argues that this statute "does not apply to workers compensation insurance coverage." Mot. 11. Citing the Texas Insurance Code and a 2008 federal district court opinion, Great West requests that the Court reconsider its finding that Great West violated this statute in an amount to be decided by the jury. *See* MOO, 45-49. Because Great West could have made that argument in its original briefing, however, the Court will not permit it to do so now. *See*

5

*Servants of the Paraclete*, 204 F.3d at 1012; *Matosantos Com. Corp.*, 245 F.3d at 1209 n. 2; *United States v. Castillo-Garcia*, 117 F.3d at 1197.³

       **IT IS THEREFORE ORDERED**, for the foregoing reasons, that Great West's Motion for Reconsideration is **DENIED**.

       **SO ORDERED.**

       **THE HONORABLE GREGORY J. FOURATT**
       **UNITED STATES MAGISTRATE JUDGE**
       ***Presiding by Consent***

---

³ Having exercised its discretion not to consider a new argument that should have been made in the principal briefing, the Court has no occasion to consider MVT's alternative argument that Great West's obligation to pay Attorney Blanco's fees arose under the employer's liability policy as opposed to the workers compensation policy. *See* Pl.'s Resp., 6-7. The task of examining that argument in light of authorities such as *Texas Mut. Ins. Co. v. Texas Dep't of Ins., Div. of Workers' Comp.*, 214 S.W. 3d 613, 619-20 (Tex. App. [Austin] 2006) is best left for another day.