UNITED STATES DISTRICT COURT
DISTRICT OF NEW MEXICO

MVT SERVICES, LLC d/b/a/ MESILLA
VALLEY TRANSPORTATION,

    Plaintiff,

v.                                                                                     Civ. No. 18-1128 GJF/KRS

GREAT WEST CASUALTY COMPANY,

    Defendant,

**ORDER ON DEFENDANT'S MOTION TO STRIKE
PLAINTIFF'S DESIGNATION OF REBUTTAL EXPERT WITNESS**

THIS MATTER is before the Court on Defendant Great West Casualty Company's "Motion to Strike Plaintiff's Designation of 'Rebuttal' Expert Witness" [ECF 94] ("Motion"). The Motion is fully briefed. *See* ECFs 97 (response), 99 (reply).[1] For the reasons set forth below, the Court will **GRANT IN PART AND DENY IN PART** Great West's Motion.

**I.    BACKGROUND**

The Court's scheduling order set MVT's expert disclosure deadline for January 28, 2020, and Great West's expert disclosure deadline for February 28, 2020. ECF 34 at 2. MVT did not designate any expert witnesses before its expert disclosure deadline expired. Great West, however, timely designated a licensed insurance adjuster, attorney Charles L. Levy, to "provide expert testimony" as a retained expert. ECF 58 at 1. Along with this designation, Great West disclosed Levy's report, which contained "his opinions regarding Great West's claims handling . . . [and] the Texas Prompt Payment of Claims Act." *Id.*

---

[1] "[T]o ensure that the Court d[id] not decide an issue that has been overcome by intervening events, the Court [sought] the parties' views as to whether the instant motion remain[ed] ripe for judicial decision," ECF 174 at 1, and the parties confirmed their view that the Motion indeed "remain[ed] ripe for judicial decision," ECF 178 at 1.

On March 30, 2020, MVT designated a "rebuttal expert," namely an insurance industry expert and attorney, Teresa Bohne-Huddleston, to "offer opinions regarding the insurance claims handling of Great West, as well as rebut the opinions of [Levy]." ECF 76 at 1. In connection with this designation, MVT also disclosed Huddleston's written report, which likewise asserts that she was "[s]pecifically … retained to rebut the opinions of [Levy]." ECF 76-1 at 1.

### A. Parties' Primary Arguments

Great West claims that—aside from its three introductory paragraphs—the remainder of Huddleston's 17-page report in no way rebuts Levy's report. ECF 94 at 6.[2] Instead, Great West argues that, by designating Huddleston as a "rebuttal expert" and disclosing her report, MVT has merely "late-file[d] its designation of experts for its case-in-chief under the guise of 'rebuttal' experts." *Id.* at 5. Great West complains that "[MVT's] late-designation has deprived Great West of the opportunity to respond to Plaintiff's claims and allegations and theories as put forth in its 'Rebuttal' report." *Id.* at 6. Consequently, Great West requests that the Court either "preclude introduction of Huddleston's report and testimony for use in any motion, hearing, or trial of this matter" or "afford some alternate or combination of alternative relief to ameliorate the prejudice and harm to Great West." *Id.* at 7-8.

In response, MVT claims that Huddleston "is a proper rebuttal expert" who was "timely disclosed" within the 30-day window for disclosing rebuttal expert witnesses. ECF 97 at 2-5. MVT argues that because Levy "offered an opinion on Great West's handling of MVT's claims,"[3]

---

[2] *But cf.* ECF 99 at 3 (Great West admitting in its reply that (1) "Levy's report directly addressed [MVT's] elements of its *causes of action* and *causation* elements" (including "the reasonableness of Great West's conduct in light of [MVT's] claims associated with statutory duties of good faith and fair dealing") and (2) "[t]he remainder of Huddleston's report [(i.e., the portion of the report that extends beyond the three introductory paragraphs)] addresses [MVT's] case-in-chief and its elements of its *causes of action*, including *causation*" (emphasis added)).

[3] Specifically, MVT observes that "Levy [opined] that (1) nothing more than 'conclusory allegations' support MVT's contention that Great West acted unreasonably; (2) Great West's wrongful denial was not done knowingly; (3) Great

2

Great West "'open[ed] the door' for MVT to file a rebuttal report." *Id.* at 3-5 (quoting *Tanberg v. Sholtis*, 401 F.3d 1151, 1166 (10th Cir. 2005)). As a result, "Huddleston rebutted each of Levy's conclusions … regarding the reasonableness of Great West's conduct" in light of the "various statutory, regulatory, and industry standards governing how insurance claims should be reviewed." *Id.* at 4 (citing ECF 76-1 at 5, 9-16).[4] Furthermore, MVT also asserts that (1) Great West's Motion "[made] no effort to discuss either of the reports at all" and (2) although "[Huddleston's] evidence may have been offered in [MVT's] case-in-chief," this fact "does not preclude its admission in rebuttal." *Id.* at 3-4 (quoting *Koch v. Koch Indus.*, Inc., 203 F.3d 1202, 1224 (10th Cir. 2000)). Consequently, MVT requests that the Court deny Great West's Motion.

### B. Subsequent Developments

Although the parties recently provided a one-sentence statement that Great West's Motion still "remains ripe for judicial decision," ECF 178 at 1, the Court nevertheless observes that this Motion was filed at a time when MVT still bore the burden of proving every element of every claim. One month after this Motion was filed, however, the Court issued its Memorandum Opinion and Order [ECF 100]—which granted most of MVT's Motion for Summary Judgment [ECF 52] and thus fundamentally changed the nature of what remains to be litigated. Although they were given the opportunity to do so, *see* ECFs 174, 178, the parties did not take the opportunity to parcel out which portions of Levy's and Huddleston's expert opinions had been rendered moot by the Court's subsequent order.

---

West had no duty to investigate MVT's claim beyond what it did; and (4) MVT's initial agreement with Great West's erroneous denial shows that Great West acted reasonably." *Id.* at 3 (citing ECF 58-1 at 29-31).

[4] MVT also notes that "[w]hile the report does discuss MVT's theories of liability, it only does so because Great West first introduced an expert to undermine those theories." *Id.*; *see also id.* at 3-4 (also observing that "Levy stated that MVT's actions and failure to discover Great West's wrongful denial of coverage caused MVT's damages and that Great West had cured any breach of its duty to defend" (citing ECF 58-1 at 31-32)).

Substantial portions of what these experts are quarreling about are no longer relevant because the Court has decided as a matter of law that Great West "breached its duty to defend" and also "violated the Prompt Payment of Claims Act" ECF 100 at 38, 49. *See, e.g.,* ECFs 58-1 at 29-31 (Levy opining that Great West acted reasonably and appropriately in denying insurance coverage to MVT and that its handling of MVT's claim did not violate provision of the Texas Insurance Code); 76-1 at 4-9 (Huddleston opining that Great West breached its contractual duty), 9-16 (Huddleston opining that Great West violated provisions of the Texas Insurance Code, including its Prompt Payment of Claims Act). Thus, the experts' field of battle is significantly narrower now than it was approximately one year ago when their reports were produced and exchanged.[5]

## II. LAW

### A. Disclosure of Expert Rebuttal Evidence

Rule 26 of the Federal Rules of Civil Procedure provides that "[a] party must make these disclosures [of expert testimony] at the times and in the sequence that the court orders." Fed. R. Civ. P. 26(a)(2)(D). Absent a court order or stipulation providing otherwise, "if the evidence is intended *solely* to contradict or rebut evidence on the same subject matter identified by another [expert witness]," then the disclosure of such evidence "must be made … within 30 days after the other party's disclosure" *Id.* (emphasis added).

### B. Admissibility of Rebuttal Evidence

"Rebuttal evidence 'allows a party to explain, repel, contradict or disprove an adversary's proof." *United States v. Watson*, 766 F.3d 1219, 1245 (10th Cir. 2014) (quoting *United States v.*

---

[5] In due course, the Court will establish new deadlines for the parties to file a proposed pretrial order, motions in limine, jury instructions, and proposed voir dire. The Court anticipates resolving prior to trial, via motion in limine or otherwise, whether and how to reduce the scope of Levy's and Huddleston's testimonies to comport with the Court's summary judgment order.

*Magallanez*, 408 F.3d 672, 681 (10th Cir. 2005)).  Such evidence "attempts to 'disprove or contradict' the evidence to which it is contrasted." *Tanberg v. Sholtis*, 401 F.3d 1151, 1166 (10th Cir. 2005) (quoting Black's Law Dictionary 579 (7th ed. 1999)).  Such evidence, however, "is not any evidence an aggrieved litigant may wish to admit in response to a topic introduced by his opponent; whether or not rebuttal evidence is admissible depends on 'whether the initial proof might affect the case and whether the rebuttal evidence fairly meets the initial proof.'" *Id.* (quoting Christopher B. Mueller & Laird C. Kirkpatrick, 1 Federal Evidence § 12 n.2 (2d ed. 2004)).  In other words, rebuttal evidence "must be reasonably tailored to the evidence it seeks to refute." *Id.* (quoting *United States v. Stitt*, 250 F.3d 878, 897 (4th Cir. 2001)).

"When a party opens the door to a topic, the admission of rebuttal evidence on that topic becomes *permissible*." *Tanberg*, 401 F.3d at 1166 (emphasis added).  "Permissible does not mean mandatory, however; the decision to admit or exclude rebuttal testimony remains within the trial court's sound discretion." *Id.*; *see also Koch v. Koch Indus.*, 203 F.3d 1202, 1224 (10th Cir. 2000) (observing that "a district court's refusal to allow rebuttal testimony" is "review[ed] for an abuse of discretion" and that district courts are "in fact endow[ed] … with *broad discretion* in deciding whether to admit or exclude rebuttal evidence" (emphasis added) (quotation omitted)).

"Where the evidence rebuts new evidence or theories proffered in the defendant's case-in-chief, that the evidence may have been offered in the plaintiff's case-in-chief does not preclude its admission in rebuttal." *Id.* (quoting *Bell v. AT&T*, 946 F.2d 1507, 1512 (10th Cir. 1991)).  But if a plaintiff "seek[s] to rebut defense theories which [it] knew about or reasonably could have anticipated, the district court is within its discretion in disallowing rebuttal testimony." *Id.* (citing cases).

## III. DISCUSSION

The Court begins by observing that MVT has unambiguously committed to the position that Huddleston is a rebuttal expert *only*. *See* ECFs 76 at 1; 97 at 2-5. Although Great West accused MVT of improperly trying to smuggle her opinions into MVT's case-in-chief under the guise of rebuttal, MVT's response brief directly refutes that. *See* ECF 97 at 2-5. Consequently, the Court will take MVT at its word: Huddleston is a rebuttal expert only and will testify, if at all, only in MVT's rebuttal case.

Next, although Great West correctly observes that "[t]he Court did not provide any 'rebuttal expert' deadlines," ECF 94 at 1 (citing ECF 34), the Court finds that Plaintiff timely designated Huddleston as a rebuttal expert. Rule 26 of the Federal Rules of Civil Procedure clearly gives MVT the opportunity to designate such an expert "within 30 days after the other party's disclosure" when a court order or stipulation does not provide otherwise. Fed. R. Civ. P. 26(a)(2)(D).[6]

In asserting that Huddleston's report (aside from its three introductory paragraphs) did not rebut Levy's report, Great West did not examine her report line-by-line or even paragraph-by-paragraph to demonstrate that her opinions were unconnected to, independent of, or unresponsive to Levy's opinions. *See* ECFs 94, 99. Instead, Great West focused primarily on MVT's brief one-sentence *description* of that report. *See* ECF 94 at 5-6 (observing that MVT's designation "expressly note[s] that [Huddleston] 'will offer opinions regarding the insurance claims handling of Great West Casualty Company, *as well as rebut*…'" (quoting ECF 76 at 1) (emphasis added)). Great West then simply urges the Court to use either of two blunt tools: (1) strike Huddleston's report in its entirety and ban her from testifying altogether; or (2) limit her report and testimony to

---

[6] Although the last day of this 30-day period fell on Sunday, March 29, 2020, the deadline was extended "until the end of the next day" (i.e., March 30, 2020). Fed. R. Civ. P. 6(a)(1)(C).

6

its first three paragraphs. *See* ECF 94 at 7-8. The Court is disinclined to do the granular point-by-point comparison that Great West should have done for itself. Nonetheless, now having thoroughly reviewed the Levy and Huddleston reports in their entirety, the Court agrees with MVT that the opinions in Huddleston's report indeed rebut the opinions in Levy's report.

To be sure, the manner in which MVT described Huddleston's opinions was inartful. *See* ECF 76 at 1 (MVT describing Huddleston's report as "offer[ing] opinions regarding the insurance claims handling of Great West Casualty Company, *as well as rebut[ting] the opinions* of [Levy] in his February 28, 2020 report" (emphasis added)). As a literal and semantic matter, that description is broader than the proper scope of rebuttal experts set forth in Fed. R. Civ. P. 26(a)(2)(D). Having now reviewed the briefs and the dueling reports, however, the Court views MVT's word-choice as inadvertent and inconsequential. Not only is Huddleston's report restricted to opinions that challenge, refute, and criticize Levy's opinions, *see* ECFs 58-1 at 29-31; 76-1 at 4-17, her report also clearly sets forth the narrowness of her charge: "Specifically, I have been retained *to rebut the opinions* of Great West's expert, Mr. Charles L. Levy, *as stated in his February 28, 2020 report*," ECF 76-1 at 1 (emphasis added). Consequently, Huddleston's clarification eliminates any residual ambiguity caused by MVT's imprecise description of her opinions.

Finally, any surprise or prejudice of which Great West has complained in its Motion, *see, e.g.,* ECF 94 at 6, has subsided. The Motion itself was filed ten months ago; there is still no trial setting (due to the District of New Mexico's policy prohibiting the scheduling of civil jury trials in light of the current Covid-19 restrictions); and Great West has ostensibly now deposed Huddleston. *See* ECF 182 (Third Amended Notice of Intention to Serve Subpoena, scheduling deposition of Huddleston for March 4, 2021, via Zoom). Furthermore, MVT has confirmed—and

the Court has in this order memorialized—that Huddleston is a rebuttal witness *only*. Thus, the Court struggles to identify any residual and uncured prejudice that Great West could have suffered by MVT's timely designation of Huddleston as a rebuttal expert. Nonetheless, in its discretion and in an abundance of caution, the Court will grant Great West thirty days after the filing of this order in which to disclose a report responsive to the opinions in Huddleston's report.

## IV. CONCLUSION

**IT IS THEREFORE ORDERED** that Great West's Motion is **GRANTED IN PART AND DENIED IN PART** as follows:

(1) Great West's Motion is **GRANTED** in that the Court will preclude the introduction of Huddleston's testimony to the extent it does not rebut evidence introduced by Great West. The Court will permit MVT to introduce Huddleston's testimony only if (a) Great West introduces Levy's opinion(s) and (b) Huddleston's testimony is used in MVT's rebuttal case to rebut Levy's opinion(s).

(2) Great West's Motion is **GRANTED** in that Great West may disclose if it wishes, but no later than **April 30, 2021**, a report that responds to Huddleston's report.

(3) Great West's Motion is otherwise **DENIED**.

**SO ORDERED.**

_____
**THE HONORABLE GREGORY J. FOURATT
UNITED STATES MAGISTRATE JUDGE
*Presiding by Consent***