**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

MVT SERVICES, LLC, doing business as
Mesilla Valley Transportation,

       Plaintiff,

v.                            No. 2:18-cv-01128 GJF/KRS

GREAT WEST CASUALTY COMPANY,

       Defendant.

**<u>ORDER GRANTING MOTION TO QUASH</u>**

     THIS MATTER is before the Court on Plaintiff's Motion to Quash and for a Protective

Order, (Doc. 212), filed July 23, 2021.  Defendant filed a response to the Motion to Quash on

August 5, 2021, and Plaintiff filed a reply on August 19, 2021.  (Docs. 215, 216, 223).  Having

considered the parties' briefing, the record of the case, and relevant law, the Court will grant the

Motion to Quash.[1]

     Plaintiff moves to quash a subpoena Defendant served on "Anderson Kill, P.C." on July

16, 2021.  Anderson Kill, P.C. is the former employer of David Bender, Caroline Ford, and

Michael Stoner, who are currently Plaintiff's counsel in this proceeding.  (Doc. 212) at 4.  The

subpoena seeks:

    1.  Anderson Kill's electronic and hard copies of all calendar appointments for Mr.
       Bender, Ms. Ford, and Mr. Stoner related to the Parada Litigation, the Parada Claims,
       the Crum & Forster Litigation, MVT's insurance coverage, and MVT's ERISA
       benefits from September 15, 2013 to May 15, 2015.

    2.  Anderson Kill's telephone records for calls to and from the former office phone
       numbers for Mr. Bender, Ms. Ford, and Mr. Stoner to five different phone numbers
       from September 15, 2013 to May 15, 2015.

---

[1] The history of this case and its current procedural posture are set forth in the Order on
Plaintiff's Motion for Summary Judgment, (Doc. 100), and Order on Defendant's Motions to
Compel, (Doc. 191).  The Court does not restate that history here.

3.  Anderson Kill's new file or new matter opening statement showing when it opened its file related to the Parada Litigation (with privileged information redacted).

4.  Anderson Kill's billing statements for its work related to the Parada Litigation, the Parada Claims, the Crum & Forster Litigation, MVT's insurance coverage, and MVT's ERISA benefits (with privileged information redacted).

5.  Anderson Kill's coverage opinion and related recommendations to MVT related to the Parada Litigation.

6.  Anderson Kill's notes of Mr. Bender's, Ms. Ford's, and Mr. Stoner's calls or meetings with MVT, Dean Rigg, Todd Silberman, Steve Blanco, and Robert Skipworth related to the Parada Litigation from September 15, 2013 to May 15, 2015.

*See* (Doc. 215) Exhibit A.  Plaintiff moves to quash this subpoena because it is overly broad and seeks privileged information.  (Doc. 212) at 5-11.  Defendant disputes that the requests are overly broad or seek privileged information.  (Doc. 215) at 6-23.

The "party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena."  Fed. R. Civ. P. 45(d)(1).  A court "must quash or modify a subpoena that . . . subjects a person to undue burden."  Fed. R. Civ. P. 45(d)(3)(A)(iv).  Where a subpoenaed party asserts undue burden, that party "has the burden to support its objection, unless the request is overly broad on its face."  *Stewart v. Mitchell Transp.*, 2002 WL 1558210, at *4 (D. Kan.).

"A subpoena to a third party under Rule 45 is subject to the same discovery limitations as those set out in Rule 26."  *Quarrie v. Wells*, 2020 WL 4934280, at *2 (D.N.M.) (citation omitted).  Rule 26 allows parties to "obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case."  Fed. R. Civ. P. 26(b)(1).  Factors that pertain to proportionality are "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the

burden or expense of the proposed discovery outweighs its likely benefit." *Id.*  In addition, "discovery from third-parties in particular must, under most circumstances, be closely regulated." *Premier Election Sols., Inc. v. Systest Labs Inc.*, 2009 WL 3075597, at *3 (D. Colo.). "It is generally recognized that a non-party involuntarily embroiled in civil litigation should not be subjected to undue burden or significant expense merely by virtue of having received a subpoena." *New Mexico Oncology & Hematology Consultants, Ltd. v. Presbyterian Healthcare Servs.*, 2015 WL 13650053, at *2 (D.N.M.) (citation omitted).  Accordingly, "when the request is overly broad on its face or when relevancy is not readily apparent, the party seeking the discovery has the burden to show the relevancy of the request." *Johnson v. Kraft Foods N. Am., Inc.*, 238 F.R.D. 648, 653 (D. Kan. 2006).

The presiding judge has held that: (1) Defendant's duty to defend Plaintiff in the *Parada* litigation arose on October 28, 2013 (the date Plaintiff tendered the *Parada* lawsuit); (2) Plaintiff did not withdraw its tender; and (3) Defendant erroneously denied coverage on December 10, 2013.  (Doc. 100) at 25-38.  The remaining issues, therefore, are whether Plaintiff is entitled to recover: (1) the $250,000 deductible Plaintiff paid to Crum and Forster to invoke coverage under its secondary policy; (2) $250,000 of Plaintiff's own money that it contributed toward the settlement of the *Parada* lawsuit; and (3) $41,476.84 Plaintiff paid to counsel Steven Blanco to assist in the *Parada* lawsuit.  *Id.* at 38.  To determine Plaintiff's damages, the Court has held there are factual disputes regarding: (1) whether Plaintiff could have invoked the workers compensation exposure limit earlier in the case; and (2) whether the *Parada* plaintiffs' recovery would have been limited to the workers compensation limit despite the gross negligence claim. *Id.* at 40-42 (stating a jury will need to decide whether Defendant's breach "irrevocably denied MVT its choice-of-forum and thereby raised the stakes of the *Parada* lawsuit so high as to cause

MVT to pay $500,000 that it otherwise would not have," and whether "the gross negligence claim posed no threat whatsoever to MVT").

Defendant's subpoena to Anderson Kill, P.C. is in no way limited to these remaining issues. While some of Defendant's requests are restricted to information concerning the *Parada* litigation, the Crum & Forster litigation, and Plaintiff's insurance coverage, they are not further limited to information related to whether Plaintiff could have invoked the workers compensation exposure limit earlier in the case or whether the *Parada* plaintiffs' recovery would have been limited to the workers compensation limit despite the gross negligence claim. While Defendant argues its requests "bear directly upon" the remaining issues, Defendant fails to explain how its requests for calendar appointments, phone records, billing statements, notes of calls and meetings, and broad requests for coverage opinions and recommendations, are tailored to the remaining issues. For example, Defendant states that information regarding Plaintiff's ERISA matters are relevant because the attorney who drafted Plaintiff's ERISA plan is also Plaintiff's labor and employment attorney from the *Parada* litigation, so ERISA matters are relevant to the timing of what Plaintiff knew regarding its insurance coverages. (Doc. 215) at 10. This request is too attenuated to be considered relevant to the remaining issues, especially for a subpoena to a third party which the Court must "closely regulate." *Premier Election Sols., Inc.*, 2009 WL 3075597, at *3. For these reasons, the Court finds that the subpoena is facially overly broad.

In addition, the Court finds the subpoena seeks privileged information. Texas law governs the application of attorney-client privilege in this diversity suit arising under Texas law, and federal law governs the work product privilege. *See* Fed. R. Evid. 501; *Anaya v. CBS Broad., Inc.*, 251 F.R.D. 645, 650 (D.N.M. 2007). Defendant's requests for billing records, insurance coverage opinions and recommendations, and notes from counsel's calls and meetings with Plaintiff, are covered by attorney-client and work product privilege because these records

include "confidential communications made for the purpose of facilitating the rendition of professional legal services to the client," as well as counsel's mental processes and legal strategies and impressions.  Tex. R. Evid. 503; *Resolution Trust Corp. v. Dabney*, 73 F.3d 262, 266 (10th Cir. 1995); *see also In re Gen. Agents Ins. Co. of Am., Inc.*, 224 S.W. 3d 806, 818 (Tex. App.) (finding an insurance coverage opinion "clearly contain[s] confidential communications made for the purpose of facilitating the rendition of professional legal services").

Defendant argues that Plaintiff has waived attorney-client privilege under the offensive-use theory adopted by the Texas Supreme Court in *Republic Ins. Co. v. Davis*, 856 S.W.2d 158, 163 (Tex. 1993).  To determine whether offensive-use waiver has occurred, courts must make the following determinations: (1) the party asserting the privilege must be seeking affirmative relief; (2) the privileged information must be such that, if believed by the fact finder, "in all probability it would be outcome determinative of the cause of action asserted;" and (3) disclosure of the confidential information must be the only means by which the aggrieved party may obtain the evidence.  *Davis*, 856 S.W.2d at 163.  Plaintiff concedes it is seeking affirmative relief in this case.  Nevertheless, Defendant fails to point to specific evidence it seeks from Anderson Kill, P.C. that would be determinative of the remaining issues and fails to demonstrate that Plaintiff is relying on this confidential information to support its case.  "[M]ere relevance" is insufficient to find a party has waived its attorney-client privilege through the offensive use of the privileged information; instead, the "confidential communications must go to the very heart of the affirmative relief sought."  *Davis*, 856 S.W.2d at 163; *see also DeWitt and Rearick, Inc. v. Ferguson*, 699 S.W.2d 692 (Tex. App.) (finding offensive-use waiver applied where one of the parties sought to avoid liability based on actions taken on advice of counsel but refused to reveal

evidence supporting that assertion on the basis the communications were protected by attorney-client privilege).

Defendant asserts that obtaining documentary evidence of when Plaintiff had notice it could raise the workers compensation defense is outcome determinative, and that Defendant has been unable to obtain this information through depositions.  (Doc. 215) at 18-22.  However, Defendant acknowledges it has several documents in its possession that it claims demonstrate Plaintiff's notice or knowledge of its potential coverage arguments as early as March, May, or October 2014.  (Doc. 215) at 19 (citing Exhibits D-1, D-2, E, and G).  Moreover, the presiding judge did not hold that Plaintiff's damages are dependent on precisely when Plaintiff determined it could invoke the workers compensation defense.  Indeed, the presiding judge noted that "it is []
clear that MVT developed information (likely in the first few months of 2015) that caused it to believe that the *Parada* claim was in fact covered by Great West's WC Policy."  (Doc. 100) at 40.  He further reasoned:

> [T]he Court wrestles with why Great West – the party-in-breach – should benefit just because MVT perhaps could have realized sooner that its own worker's compensation insurer had wrongfully denied it coverage.  Why should the breaching party benefit because MVT waited until it did to attempt to invoke the Exclusive Remedy and file the declaratory judgment action?  Why should Great West's breach be excused only because it may have been theoretically possible for MVT to attempt to invoke the Exclusive Remedy a few months before the Parada trial instead of four weeks?  Who's to say the trial judge would have made a different decision even then?  Why should Great West escape paying something for its wrongful denial of coverage that doubtlessly exposed its insured to liability vastly greater than it ever should have been had its insurer done what it promised to do?

*Id.* at 40-41.  Absent a stronger showing that these documents are outcome determinative, the Court finds Plaintiff has not waived its attorney-client privilege under the offensive-use theory.

*See Davis*, 856 S.W.2d 163 ("Privileges [] represent society's desire to protect certain relationships, and an offensive use waiver of a privilege should not lightly be found.").

For the reasons stated above, the Court finds the subpoena issued to Anderson Kill, P.C., is overly broad and seeks privileged information.

IT IS THEREFORE ORDERED that Plaintiff's Motion to Quasha and for Protective Order, (Doc. 212), is granted.

IT IS SO ORDERED.


_____
KEVIN R. SWEAZEA
UNITED STATES MAGISTRATE JUDGE