# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW MEXICO

MVT SERVICES, LLC d/b/a
MESILLA VALLEY TRANSPORTATION,

      Plaintiff,

v.                                  Civ. No. 18-1128 GJF/KRS

GREAT WEST CASUALTY COMPANY,

      Defendant.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

In June 2020, this Court granted in part the motion for summary judgment filed by Plaintiff Mesilla Valley Transportation ("MVT"). *See* ECF 100 (Mem. Op. and Order).[1] As to Count One of the Amended Complaint [ECF 42], which alleged that Defendant Great West Casualty Company ("Great West") breached its contractual obligation to defend MVT, the Court granted summary judgment to MVT on the elements of (a) existence of a valid contract, (b) performance by MVT, (c) Great West's duty to defend arising on October 28, 2013, and (d) Great West's breach of its duty to defend. ECF 100 at 49. The Court held, however, that genuine factual disputes as to whether the breach caused damage to MVT and, if so, in what amount, could only be resolved at trial. *Id.* at 38–42.

As to Count Two of the Amended Complaint, which alleged that Great West violated the Prompt Payment of Claims Act under the Texas Insurance Code, the Court granted summary

---

[1] The Court incorporates the findings of fact and conclusions of law of that Memorandum Opinion and Order into this decision, as well as those included in its subsequent denial of Great West's Motion for Reconsideration. *See* ECF 113 (Mem. Op. and Order denying reconsideration).

judgment to MVT on liability but ruled that a trial would be necessary to decide the question of damages. *Id.* at 45-49.[2]

The parties eventually withdrew their demands for a jury trial and stipulated to trying the remaining issues to the Court. *See* ECF 256 (joint stipulated withdrawal of jury demands). Consequently, from April 11–13, 2022, the Court held a bench trial in which it received testimony from five witnesses (four in person and one by deposition) and admitted a total of 56 exhibits.[3] At the conclusion of the evidentiary phase, the Court granted the parties several weeks to prepare and file closing arguments and proposed findings of fact and conclusions of law.

The Court listened carefully to the trial testimony, examined each exhibit, and took sixteen single-spaced pages of contemporaneous notes to assist its recollection of the evidence. In addition, the Court has re-read the trial transcript in its entirety. Now having thoroughly considered all of the evidence, the parties' written submissions, and relevant authority, the Court issues its Findings of Fact and Conclusions of Law.

The Court has limited the scope of these Findings and Conclusions to the narrow and discrete issues that remained after the summary judgment litigation. To the extent the Court

---

[2] Prior to trial, the Court granted MVT's unopposed motion to dismiss Count Three of the Amended Complaint. ECF 253 (order of dismissal). In the fourth and final count of the Amended Complaint, MVT asserted a claim for attorney's fees under both the Texas Civil Practices and Remedies Code and the Texas Insurance Code. ECF 42 at 10. The parties agree that this claim becomes ripe only to the extent that the Court awards judgment to MVT on Count One. *See* ECF 286 (clerk's minutes) at 5 (observing that MVT "confirmed that if the Court finds that MVT is not entitled to recover damages on its breach of contract claim (Count I), then MVT cannot recover attorney's fees for the instant litigation under Chapter 38 [of the Texas Civil Practices and Remedies Code]"); *id.* at 6 (Great West not disputing that MVT's claim for attorney's fees cannot become ripe unless Great West is liable and instead advocating that "MVT [cannot] receive a double recovery of attorney's fees … under both Chapter 38 … and Chapter 542 of the Texas Insurance Code"); Pretrial Conference Recording at 1:28:00-1:33:30 (recording of these representations by MVT and Great West); PTO at 17 (Great West asserting that "MVT is not entitled to recovery of its … attorney's fees incurred in the present action pursuant to Texas Civil Practice and Remedies Code § 38.001 if it is not the prevailing party").

[3] The parties submitted additional evidence related to Great West's offer of proof in support of its request to reopen the Court's summary judgment decision. *See, e.g.,* ECF 277, 280. As the Court forecasted during the trial, the Court is not reopening or revisiting that decision. *See* Tr., Vol II, at 120:1–122:6; Tr., Vol. III at 8:14–22:5. Consequently, the Court did not consider as part of the trial record the additional evidence associated with Great West's offer of proof on liability.

includes here any facts that it found to be undisputed during the summary judgment litigation, the Court does so only for context. Unless otherwise stated, the Court found each of the findings by a preponderance of the evidence. The findings and conclusions contained herein are only those the Court considered essential to its Judgment. No inference should be drawn about the Court's view of any other stipulated or disputed findings or conclusions submitted by the parties that are not discussed herein.

## I.   FINDINGS OF FACT

1.     MVT purchased Workers Compensation and Employers Liability Policy No. WC25458B ("WC/EL Policy") from Great West for a coverage period of January 1, 2013 through January 1, 2014. *See* Ex. 1.

2.     MVT has paid all premiums due and owing under this policy, including premiums for Texas exposures through September 16, 2013. Pretrial Order ("PTO") [ECF 269] at 11 (Stipulated Factual Contention 4).[4]

3.     The WC/EL Policy provided for Texas workers' compensation and employers' liability coverages and contained duties to defend as to both.

4.     As relevant here, the Workers Compensation component (Part One) of the WC/EL Policy provided:

> GENERAL SECTION
>      . . . .
>      C.     Workers Compensation Law
>
>      Workers Compensation Law means the workers or workmen's compensation law and occupational disease law of each state or territory named in Item 3.A of the Information Page.
>
>      . . . .

---

[4] The PTO formally approved the parties' First Amended [Proposed] Pretrial Order [ECF 261]. *See* PTO at 24-25.

PART ONE – WORKERS COMPENSATION INSURANCE

    A.    How This Insurance Applies

This workers compensation insurance applies to bodily injury by accident . . . . Bodily injury includes resulting death.

    1.    Bodily injury by accident must occur during the policy period.

. . . .

    B.    We Will Pay

We will pay promptly when due the benefits required of you by the workers compensation law.

    C.    We Will Defend

We have the right and duty to defend at our expense any claim, proceeding, or suit against you for benefits payable by this insurance. We have the right to investigate and settle these claims, proceedings[,] or suits.

. . . .

Ex. 1 at 35.[5]

5.    Item 3.A of the Information Page of the WC/EL Policy included the Workers' Compensation Law of the State of Texas.

6.    As relevant here, the Employers Liability component of the WC/EL Policy provided:

PART TWO – EMPLOYERS LIABILITY INSURANCE

    A.    How This Insurance Applies

This employers liability insurance applies to bodily injury by accident . . . . Bodily injury includes resulting death.

. . . .

    3.    Bodily injury by accident must occur during the policy period.

---

[5] The citation references the automated pagination at the top of the exhibit.

. . . .

B.    We Will Pay

We will pay all sums that you legally must pay as damages because of bodily injury to your employees[.]

. . . .

D.    We Will Defend

We have the right and duty to defend at our expense any claim, proceeding, or suit against you for benefits payable by this insurance. We have the right to investigate and settle these claims, proceedings[,] and suits.

. . . .

Ex. 1 at 37.

7.    Item 3.B of the Information Page of this policy specified an indemnity limit for bodily injury by accident of $1,000,000 per accident.  Ex. 1 at 19.

8.    In January 2013, MVT entered into a Staff Leasing Agreement with OEP Holdings, LLC ("OEP").  PTO at 11 (Stipulated Factual Contention 5); *see also* Ex. 48 (Staff Leasing Agreement).  Under the Agreement, MVT transferred the employment of its Texas-based employees, including a driver named Lawrence Parada, to OEP.  MVT thereafter leased their services, including Mr. Parada's, back from OEP.

9.    Through OEP, MVT purchased a non-subscriber insurance policy from Crum & Forster Specialty Insurance Company ("Crum" or "C&F"), Policy No. CF096642, effective January 3, 2013, to January 3, 2014.

10.    On August 13, 2013, MVT requested that Great West terminate its Texas coverage provided by the WC/EL Policy.

11.    On August 14, 2013, Great West processed MVT's termination request and filed the notice of termination with the Texas Department of Insurance, Division of Workers' Compensation ("DWC") on August 15, 2013.

12.     By operation of Texas law, the termination of the WC/EL Policy ordinarily would have become effective 30 days after notice was filed with the DWC.

13.     Because the effective cancellation date of the WC/EL Policy fell on Saturday, September 14, 2013, however, the cancellation date was extended to Monday, September 16, 2013, pursuant to Texas Government Code § 311.014(b).

14.     Great West does not contest that the Texas workers' compensation coverage under the WC/EL policy did not terminate until September 16, 2013.  PTO at 11 (Stipulated Factual Contention 3).

15.     On September 15, 2013, the day before the effective cancellation date of the WC/EL Policy, a semi-tractor trailer owned by MVT crashed in Texas, resulting in the deaths of Texas-based co-drivers John Mitchem and Lawrence Parada.

16.     On October 9, 2013, Mr. Parada's widow, Vivian Parada, filed a Beneficiary Claim for Death Benefits with the DWC on behalf of herself and Mr. Parada's children.  Ex. 44.

17.     The following day, on October 10, 2013, Mr. Parada's widow and children sued MVT in state district court in El Paso, Texas ("the *Parada* Lawsuit").  Ex. 39.  As relevant here, the original petition alleged claims of negligence and gross negligence.  The Plaintiffs sought compensatory and punitive damages, among other relief.

18.     On October 28, 2013, MVT tendered the defense of the *Parada* Lawsuit to Great West under the WC/EL Policy.

19.     On October 29, 2013, Great West advised MVT that coverage for the *Parada* Lawsuit was to be found under MVT's policy with C&F rather than with Great West.

20.     On November 6, 2013, coverage counsel for Great West, David Schubert, had a conversation with in-house counsel for MVT, Todd Silberman, in which they discussed among

other things that (a) C&F had agreed to defend MVT under the C&F policy and (b) Great West would be denying MVT's claim.

21.     MVT filed its Original Answer in the *Parada* Lawsuit on November 14, 2013. Believing that MVT's WC/EL Policy had expired prior to the accident, MVT's counsel did not invoke in the Original Answer the protections of the exclusive remedy of workers' compensation benefits under Texas Labor Code § 408.001(a) (the "Exclusive Remedy"). This statutory remedy bars claims of simple negligence from being brought against an employer by an employee covered by workers' compensation benefits.

22.     On December 10, 2013, Great West formally denied MVT's claim and rejected its tender of a defense, reasoning that the underlying claim arose from an incident occurring outside the coverage period provided under the WC/EL Policy. Ex. 4. Great West consequently refused to defend MVT in the *Parada* Lawsuit.

23.     At or near the time it tendered the *Parada* Lawsuit to Great West, MVT made the same tender to C&F. C&F appointed Robert Skipworth, Esq., to defend MVT under the C&F Policy. Mr. Skipworth served in that capacity until the conclusion of the *Parada* Lawsuit in 2015.

24.     As relevant here, the C&F policy provided only employer liability coverage and did not provide workers' compensation coverage. *See* Ex. 19 at 000754; *see also* PTO at 12 (Stipulated Factual Contention 12). The C&F policy did not permit MVT to invoke the protection of the Exclusive Remedy or plead the remedy in its Original Answer.

25.     In or about May 2014, while the *Parada* Lawsuit was pending but after Great West denied coverage, MVT separately retained Steve Blanco, Esq., to assist Mr. Skipworth in defending the case. Mr. Blanco and other attorneys in his firm had represented or advised MVT since 1999–2000 on a variety of matters, including labor and employment law. MVT was

concerned about the level of Mr. Skipworth's experience in defending wrongful death trucking cases as well as in "non-subscriber" cases (those in which the defendant employer is not subscribed to the Texas workers' compensation system).  MVT further believed, based on its assessment of the reputation and abilities of the Paradas' counsel, that its interests were best served by expanding its trial team.  *See, e.g.*, Tr. I [ECF 283] at 16 (opinion by MVT's then-in-house counsel that Paradas' counsel "is well known…as being a smart, capable attorney who is absolutely a tiger and will find ever dollar he can for his clients.").

26.     On April 17, 2015, counsel for the Parada plaintiffs, James Scherr, asserted that the damages in the *Parada* Lawsuit could exceed $25 million and demanded $12.5 million from MVT to settle the lawsuit.  *See* Ex. 45.  This was the Parada Plaintiffs' first settlement demand.

27.     In late April 2015, MVT authorized an outside law firm, Anderson Kill P.C., to prepare and file a lawsuit against Great West challenging Great West's denial of coverage of the *Parada* Lawsuit.  PTO at 12 (Stipulated Factual Contention 13).

28.     Anderson Kill thereafter determined that Texas Government Code § 311.014 extended the effective termination date of Texas workers' compensation coverage under the policy to September 16, 2013, the day *after* the accident that gave rise to the *Parada* lawsuit.

29.     Beginning May 12, 2015, MVT began the process to invoke the protections of the Exclusive Remedy in the *Parada* Lawsuit.  *E.g.,* Ex. 41 (MVT's Second Amended Original Answer and Affirmative Defenses, adding workers' compensation exclusive remedy); Ex. 43 (MVT's Supplemental Plea to the Jurisdiction and Abatement).  The Texas district and appellate courts denied MVT's request.

30.     Also on May 12, 2015, MVT filed a declaratory judgment action against Great West in the United States District Court for the Western District of Texas.  Ex. 40.  MVT sought a

judicial declaration that the WC/EL policy was still in force on the day of the accident that gave rise to the *Parada* Lawsuit and that the lawsuit was covered under the policy.  The declaratory judgment action was dismissed with prejudice by stipulation of the parties on September 28, 2015.

31.     On May 15, 2015, Anderson Kill sent a letter to Great West, asserting that Great West's denial of coverage was incorrect due to its failure to account for the Computation of Time provisions in Texas Government Code § 311.014(b), and further asserting that coverage was in effect on September 15, 2013, the date of the accident giving rise to the *Parada* Lawsuit.

32.     On May 22, 2015, counsel for Great West reversed Great West's December 10, 2013, coverage denial and acknowledged that Great West owed MVT a duty to defend in the *Parada* Lawsuit under the Employers Liability coverage section (Part Two) of the WC/EL Policy. *See* Ex. 6 at 2.  The letter emphasized that the available policy limit was $1 million per accident. *Id.*

33.     In light of these developments, Great West agreed to participate in MVT's defense in the *Parada* Lawsuit going forward and retained El Paso attorney Carlos Rincon to represent MVT.

34.     The trial team for MVT in the *Parada* lawsuit thereafter included Mssrs. Rincon, Skipworth, and Blanco.  At the *Parada* trial, Mssrs. Rincon and Blanco expected to divide up between themselves most of the witness examinations, as well as voir dire and jury argument.

35.     On June 4, 2015, Great West issued a formal certification that the WC/EL Policy was in effect as of September 15, 2013.  *See* Ex. 33; *see also* PTO at 12 (Stipulated Factual Contention 15).

36.     Postured as it was and headlined by the simple negligence claims, the *Parada* Lawsuit ultimately settled during trial for $3,500,000.  That amount included C&F's policy limit

of $1,000,000, Great West's Employers Liability policy limit of $1,000,000, an unrelated excess insurer's contribution of $1,000,000, and $500,000 from MVT. Of its portion, MVT paid $250,000.00 toward the settlement in satisfaction of the C&F Policy's retention and another $250,000.00 in contribution toward the settlement with the *Parada* plaintiffs. Great West also paid Texas workers' compensation death benefits as a part of the settlement. *See* Ex. 35 at 007968-69.

37. This Court heard testimony from four witnesses called by MVT as to their perceptions of the risk that MVT would have been found liable for gross negligence (and therefore subject to a punitive damages award) in the *Parada* Lawsuit.[6] Todd Silberman, Esq., former in-house counsel for MVT, testified without objection that MVT viewed its exposure on the gross negligence claims as "[m]inimal, at best. We didn't – in this case, we didn't see a real possibility of there being a finding of gross negligence." Tr. I at 26. Mr. Silberman further explained why MVT was not concerned about a jury awarding punitive damages in the *Parada* Lawsuit:

> Because, for punitive damages, there has to be some kind of wanton disregard or intent to injure the other party. And, in this case, none of that was there. The truck was a new truck and was well maintained. The trailer was well maintained. Both drivers, their hours of service logs were clean. Their qualification files were clean. They were well qualified to do the job they were hired to do. There weren't medical concerns. They had just come off a rest period, so they were ready to drive, they were ready to go. And their training was good. So there was nothing that created any kind of concern for us as a result.

*Id.* at 27–28. Mr. Silberman added that no member of the defense team perceived any meaningful exposure on the gross negligence claims, *id.* at 28, even though he believed the trial judge was going to permit the gross negligence claims to go to the jury and permit the Paradas' expert to testify about the claims. *Id.* at 85–86. Mr. Silberman denied that anything, including the plaintiffs'

---

[6] The Court uses the phrase "punitive damages" to track the language used during the trial testimony. The Court intends that phrase to be synonymous with "exemplary damages" as that phrase is used in Texas Civil Practice & Remedies Code § 41.003.

expert report or the initial $12.5 million settlement demand, caused him to change his opinion about the litigation threat posed by the gross negligence claims. *Id.* at 26, 31. He further opined that no portion of the subsequent settlement of the *Parada* Lawsuit was meant to cover punitive damages, *id.* at 36, nor that any portion of MVT's own contribution to the settlement was related to the gross negligence claims. *Id.* at 40. The Court found Mr. Silberman's testimony on the foregoing matters to be credible.

38.     Robert Skipworth, Esq., was retained by C&F to represent MVT in the *Parada* Lawsuit and did so from in or about October 2013 through the conclusion of the *Parada* proceeding. He opined without objection that, based on the results of his investigation and the discovery phase of the case, MVT did not have "any" risk on the gross negligence claims and that his opinion never changed throughout the case. *Id.* at 141-42. This was true even though the trial court had decided to permit the Paradas' expert witnesses to testify *inter alia* as to driver fatigue. *Id.* at 157-60. *See also* Ex. 37 (order denying motion to exclude two experts on medication usage and causation). He testified that he did not find evidence that MVT personnel "were malicious, consciously indifferent or willful in their actions." *Id.* at 142. Mr. Skipworth further explained that, had the *Parada* lawsuit not settled, he would have moved for a directed verdict on the gross negligence claims and sought to eliminate punitive damages from the jury's consideration. *Id.* at 142-43. He viewed the litigation risk in the case to emanate from the simple negligence claims, not the gross negligence claims. *Id.* at 144. As to the simple negligence claims alone, Mr. Skipworth had valued the case at $3,000,000–$5,000,000. *Id.* at 145-46. The Court found Mr. Skipworth's testimony on the foregoing matters to be credible, particularly given his central role on the MVT defense team from virtually the outset of the *Parada* litigation and his familiarity with the evidence and discovery in the case.

39.     Dean Rigg, Chief Financial Officer at MVT for approximately 25 years, testified without objection that MVT did not commit gross negligence, either in association with the *Parada* Lawsuit or at any other times.  Tr. II at 13.  Mr. Rigg conceded that he did not know the theories under which the Paradas' counsel was pursuing the gross negligence claims or the factual underpinnings of them.  *Id.* at 30-31.  He also did not deny that the gross negligence claims were still technically viable at the time the lawsuit was settled.  *Id.* at 32. Nonetheless, Mr. Rigg emphasized that he was not personally worried about any gross negligence exposure in *Parada*. *Id.* at 48.  On the particular subject of the likelihood of a jury in the *Parada* Lawsuit returning a finding against MVT of gross negligence and awarding punitive damages against it, the Court was not persuaded by Mr. Rigg's testimony.   Although the Court otherwise found his testimony credible, the Court discounted his opinions as to gross negligence, as there was no showing that he as a non-lawyer was aware either of the Texas legal standard for gross negligence or the evidence in the *Parada* Lawsuit that would have been relevant to such a finding.

40.     Finally, Steven Blanco, Esq., testified that an employer that subscribes to the Texas workers' compensation system could be sued directly by its employees *only* in wrongful death cases and only for claims of gross negligence.  *Id.* at 68.  In such a circumstance, plaintiffs are "going to have to prove that there was significant and substantial conduct that exposed the employee to severe, extreme risk of injury or death.  It's a much higher standard than you're ever going to see for a regular negligence claim." *Id.*  Mr. Blanco testified without objection that he viewed the chance that a jury would award punitive damages in *Parada* as "remote." *Id.* at 97. Mr. Blanco did not recall whether the trial court in *Parada* had ruled on MVT's motion for summary judgment on the gross negligence and punitive damages claims, *id.* at 98, but agreed that MVT had moved to bifurcate those claims from the simple negligence claims.  *Id.* at 101-02.  He

also explained that MVT submitted a proposed jury instruction on gross negligence and punitive damages to the *Parada* trial court because the judge required it and MVT did not want the plaintiffs' proposed charge to be the only one for the judge to consider. *Id.* at 116-17.  The Court found Mr. Blanco's testimony on the foregoing matters to be credible, particularly given his extensive understanding of the relevant law, his experience in similar cases, and his role on the MVT defense team for at least a year prior to the resolution of the *Parada* litigation.

41.     Neither party called the Paradas' attorney, James Scherr, Esq., to testify on the subject.  Mr. Scherr was best positioned to testify as to whether – had the Exclusive Remedy been timely invoked and the ordinary negligence claims been diverted to the DWC – he would have continued to pursue the gross negligence claims in district court.  Furthermore, considering the testimony the Court heard about Mr. Scherr's knowledge, skills, and abilities, his views as to the potential viability and value of any leftover gross negligence claims may have been entitled to substantial deference.  Yet despite being listed three times by Great West as a "may call" trial witness [ECFs 238 at 21, 245 at 2, 261 at 21], Mr. Scherr did not testify either in person or via deposition.

42.     Neither party called Carlos Rincon, Esq., to testify on the gross negligence subject either.  From the time he was retained by Great West in late May 2015 to represent MVT in the *Parada* Lawsuit, Mr. Rincon acted as lead trial counsel.  He was the only member of MVT's trial team not to testify in this case, despite being listed multiple times by both parties as a "may call" witness.  *See* ECF 244 at 1 (MVT's trial witness list), ECF 245 at 2 (Great West's trial witness list), ECF 261 at 19, 21 (amended proposed pretrial order).

43.     Neither party called an expert witness to render any opinion as to whether the admissible evidence in the *Parada* Lawsuit would – or would not – have satisfied the legal standard for gross negligence under Texas law.

44.     Neither party introduced the expert reports that had been prepared in *Parada* or even a summary of the admissible evidence relevant to the gross negligence claims.  Consequently, the Court was unable to make its own independent decision about whether the evidence would – or would not – have been likely under Texas law to lead to a finding of gross negligence and an award of punitive damages.

45.     Although the Court considers each of the foregoing omissions curious, the Court has drawn no inference from them.

46.     The evidence introduced at trial does not permit the Court to make a finding as to whether the *Parada* trial court would have dismissed the gross negligence claims without sending them to the jury.  Nonetheless, even assuming that those claims would have been decided by a jury, the Court still finds by a preponderance of the evidence presented at trial that the likelihood of the *Parada* Plaintiffs obtaining a jury verdict on the gross negligence claims was very low.  The Court bases this finding on (a) the paucity of evidence introduced in the instant trial that would have supported a finding of gross negligence in *Parada*; (b) the testimony of Mssrs. Silberman, Skipworth, and Blanco to the effect that a finding of gross negligence in *Parada* was manifestly unlikely; and (c) the legal standard under Texas law that forbids such a finding absent a jury unanimously finding that there was "clear and convincing evidence" of gross negligence.  *See infra* Concls. of Law 8-10.

47.     Deciding whether Great West's breach of its duty to defend MVT in 2013 caused any damage to MVT requires the Court to envision a procedural scenario very different from the

one that unfolded here.  The Court must envision what *would have* happened had Great West in the fall of 2013 acknowledged coverage and provided MVT a defense.  With that scenario in mind, the Court finds by well more than a preponderance of the evidence that MVT's counsel would have invoked the Exclusive Remedy on its behalf and diverted the simple negligence claims in the *Parada* Lawsuit to the DWC.  Given the terrible facts of *Parada*, with the co-drivers burned to death, the Court finds it much more likely than not that MVT and its counsel would have neutralized the risk of a massive tort damages award at a jury trial by instead having the negligence claims administered through the DWC process.  The Court finds that MVT would have had every good reason to protect itself against a damages award conceivably well in excess of all available insurance coverage.[7]

48.     The Court finds by a preponderance of the evidence that, had Great West honored its legal duty under the WC/EL policy to defend MVT in 2013, its retained counsel would thereafter have invoked the Exclusive Remedy on MVT's behalf.  Under Texas law, that procedural step would have diverted the simple negligence claims in the *Parada* Lawsuit to the DWC and abated them in the lawsuit pending in state district court.

49.     Had the Exclusive Remedy been invoked on MVT's behalf, the *Parada* Plaintiffs still would have been entitled to pursue their claims of gross negligence in state district court.  The evidence introduced at trial did not permit the Court to make a finding as to whether the Paradas'

---

[7] The alternative scenario that this trial compelled the Court to envision is perhaps best illustrated by contemplating what would have happened had the accident occurred on September 1, 2013, instead of September 15, 2013.  Had *that* happened, no one would have questioned that Great West's WC/EL policy was still in force because the accident would have occurred well within the 30-day window provided under Texas law.  Great West would have acknowledged coverage and provided a defense.  The Court has no doubt that the Exclusive Remedy would have been pled and the *Parada* Lawsuit would have followed a procedural course and yielded a final resolution substantially different from what happened here.  Unfortunately for Great West, Texas law requires an accident occurring on September 15, 2013, to be treated just as if it had occurred fourteen days earlier.

counsel actually would have continued to pursue the gross negligence claims or instead dismissed them.

50.   The evidence introduced at trial *does* allow the Court, however, to make findings as to whether the litigation threat posed by the gross negligence claims in the *Parada* Lawsuit would still have compelled MVT to pay the $500,000 it seeks to recover here.  The Court finds by a preponderance of the evidence that – had Great West had not breached its duty to defend in 2013 and had the Exclusive Remedy been invoked and the simple negligence claims been diverted to the DWC – any litigation threat that remained in state district court from the leftover gross negligence claims would *not* have required MVT either to (a) activate its C&F policy (thereby saving the $250,000 retention), or (b) pay any of its own money toward a settlement or judgment arising from those claims.

51.   Had Great West honored its legal duty to defend MVT in 2013 after the *Parada* Lawsuit was filed, its WC/EL policy would have required Great West to defend and indemnify MVT (within policy limits) as to *all* claims against it.  Part One of the policy imposed a duty on Great West to defend and indemnify MVT as to the simple negligence claims diverted to the DWC.  Part Two of the policy imposed the additional duty on Great West to defend and indemnify MVT (up to $1,000,000) as to any gross negligence claims that would have remained behind in state district court.  Given the Court's findings about the weakness of the gross negligence claims, particularly in light of the high standard required by Texas law to prove such claims, the Court finds that the protection afforded MVT by Great West's $1,000,000 in Employers Liability coverage would have been more than sufficient to neutralize the litigation threat posed by the leftover gross negligence claims.

52.     For the sake of additional clarity, and based on the credible testimony of Messrs. Silberman, Skipworth, and Blanco, the Court finds it more likely than not that any gross negligence claims the Paradas may have continued to pursue in state court after their simple negligence claims had been diverted to the DWC would not have subjected MVT to a damages award greater than $1 million.

53.     Because the Court finds by a preponderance of the evidence that the litigation threat posed by any leftover gross negligence claims would not have exceeded $1 million, the Court further finds it more likely than not that (a) MVT would not have activated or invoked its C&F policy (thereby saving the $250,000 retention), or (b) paid any of its own money toward a settlement or judgment arising from those claims.

54.     By denying coverage, Great West lost its ability to control, influence or object to the manner in which MVT chose to staff its defense.  PTO at 12 (Stipulated Factual Contention 17).

55.     In or about May 2014, MVT retained Steven Blanco as counsel to assist in defending the *Parada* Lawsuit.

56.     Mr. Blanco had extensive experience in civil litigation, as well as an advanced understanding of relevant negligence law and MVT's business practices.

57.     The Court found credible the testimony of Todd Silberman that MVT was concerned about Mr. Skipworth's experience in wrongful death trucking cases, particularly given the reputation of the Paradas' counsel.

58.     The Court also found credible the testimony of Mr. Blanco as to Mr. Skipworth's relative lack of experience in "non-subscriber" lawsuits by employees against their employers.

59.     Carlos Rincon, MVT's defense counsel appointed by Great West, acted as co-counsel with Blanco and divided trial tasks with him.

60.     The work performed by Mr. Blanco, for which MVT sought reimbursement from Great West, was directly related to the defense and the ultimate settlement of the *Parada* Lawsuit.

61.     The Court found credible the testimony of Messrs. Silberman and Skipworth that Mr. Blanco's services in defense of the *Parada* Lawsuit were not unnecessarily duplicative of or redundant to any other attorney's work.

62.     The work performed by Mr. Blanco, for which MVT sought reimbursement from Great West, did not materially include any insurance coverage-related work in connection with the *Parada* Lawsuit.

63.     MVT reasonably believed that the legal work performed by Mr. Blanco to assist with the defense of the *Parada* Lawsuit was necessary to protect MVT's legal position and otherwise squarely in MVT's best interests.

64.     Once it acknowledged coverage for the *Parada* Lawsuit in May 2015, Great West invited MVT to submit documentation of any "out of pocket reasonable and necessary defense costs not paid by any other carrier" that MVT incurred in connection with defending the *Parada* Lawsuit.  Ex. 6 at 2.  Great West promised to "review [MVT's submission] and make any proper and appropriate reimbursement that may be owing."  *Id.*

65.     Accordingly, on September 1, 2015, MVT tendered to Great West a claim for $41,476.84 in attorney's fees and costs billed by Mr. Blanco in assisting in MVT's defense in the *Parada* Lawsuit.  *See* Ex. 7 (documenting amount paid to Blanco for defense of *Parada* Lawsuit); *see also* Ex. 34 (MVT providing additional information one week later).

66.     Great West declined to pay this claim, has not paid this claim, and did not respond to MVT's tender of this claim in any way prior to the filing of the present lawsuit.

67.     After deducting for minor adjustments, MVT paid $41,476.84 for Mr. Blanco's fees and costs in defending the *Parada* Lawsuit.

68.     No other insurance company has paid any portion of the attorney's fees or costs incurred by Mr. Blanco in assisting in MVT's defense in the *Parada* Lawsuit.

69.     Mr. Blanco's fees and costs were reasonable and necessary in the defense of the *Parada* Lawsuit.

## CONCLUSIONS OF LAW

### A.     MVT's Claim for Breach of Contract

1.     An "'insurance policy is a contract' that establishes the respective rights and obligations to which an insurer and its insured have mutually agreed." *USAA Texas Lloyds Co. v. Menchaca*, 545 S.W.3d 479, 488 (Tex. 2018) (*quoting RSUI Indem. Co. v. The Lynd Co.*, 466 S.W.3d 113, 118 (Tex. 2015)).  Texas courts therefore "construe a policy using the same rules that govern the construction of any other contract." *Id.* (citing *Ulico Cas. Co. v. Allied Pilots Ass'n*, 262 S.W.3d 773, 778 (Tex. 2008)).

2.     MVT's breach of contract claim has four elements: "(1) the existence of a valid contract; (2) [MVT] performed or tendered performance as the contract required; (3) [Great West] breached the contract by failing to perform or tender performance as the contract required; and (4) [MVT] sustained damages as a result of the breach."  *Id.* at n.21; *see also S & S Emergency Training Sols., Inc. v. Elliott*, 564 S.W.3d 843, 847 (Tex. 2018).

3.     At the summary judgment stage, this Court concluded that (1) there was no dispute as to the existence of the WC/EL Policy or its validity; (2) MVT satisfied its performance

obligation by notifying Great West of the *Parada* Lawsuit on October 28, 2013; (3) Great West's duty to defend arose on October 28, 2013 and persisted without interruption thereafter; and (4) Great West breached its duty to defend under the WC/EL Policy as a matter of law on December 10, 2013.  ECF 100 at 25, 38, 49.  And this Court also found that Great West's wrongful denial of coverage at the very least caused a substantial delay in MVT's ability to attempt to invoke the Exclusive Remedy, which would have barred the Paradas' simple negligence claims.  *Id.* at 40.

4.      The Court also determined on summary judgment that Great West is collaterally estopped by the *Crum* litigation from making any claim that its duty to defend did not arise on October 28, 2013; that res judicata does not bar MVT from pursuing any of its claims in this lawsuit; and that MVT is entitled as a matter of law to a reasonable amount of defense costs (Mr. Blanco's fees) that were related to defending the *Parada* Lawsuit.  *Id.* at 25, 39, 43 n.23, 45.

5.      At trial, MVT proved by a preponderance of the evidence that it sustained damages as a result of Great West's breach of the duty to defend.  "To recover damages for breach of contract, the breach must have been a substantial factor in causing those damages . . . A loss results from a breach of contract if the loss is the natural, probable, and foreseeable consequence of the breach."  *MJS & Assocs., L.L.C. v. Master*, 501 S.W.3d 751, 757 (Tex. App.—Tyler 2016, pet. denied); *see also Mead v. Johnson Grp., Inc.*, 615 S.W.2d 685, 687 (Tex. 1981); Texas Civil Pattern Jury Charge 115.3 ("Question on Contract Damages"; "Insurance Cases"). Consequential damages "result naturally, but not necessarily, from the defendant's wrongful acts"; they "need not be the usual result of the wrong, but must be foreseeable . . . and must be directly traceable to the wrongful act and result from it."  *Arthur Andersen & Co. v. Perry Equip. Corp.*, 945 S.W.2d 812, 816 (Tex. 1997).

6.     The Court concludes that the natural, probable, and foreseeable consequences of Great West's breach of the duty to defend caused MVT to suffer damages in the form of (1) the $250,000 retention paid pursuant to the C&F policy; (2) the $250,000 that MVT contributed to the settlement of the *Parada* Lawsuit; and (3) $41,476.84 in attorney's fees paid to Blanco to defend MVT in the *Parada* Lawsuit.  Each of these categories of damages is directly traceable to Great West's wrongful acts, and therefore MVT is entitled to recover each of these amounts as consequential damages.  *See, e.g.*, *State Farm Lloyds v. Fitzgerald*, No. 03-99-00177-CV, 2000 WL 1125217, at *4 (Tex. App.—Austin Aug. 10, 2000, no writ) (unpublished decision) (applying published Texas law in a case involving breach of insurance contract, and awarding consequential damages to the insured); *Lexington Ins. Co. v. Covest, Ltd.*, NO. 01-94-00553-CV, 1996 WL 169855, at *8-9 (Tex. App.—Houston [1st Dist.] Apr. 11, 1996, no writ) (similarly affirming award of consequential damages to the insured).

7.     Great West's breach also directly resulted in MVT incurring fees for Blanco's services, as MVT's defense counsel retained by C&F for the *Parada* Lawsuit believed that it would be advantageous for Blanco to assist at trial; MVT retained Blanco as counsel to assist in defending the *Parada* Lawsuit; MVT's management reasonably believed that the legal work performed by Blanco to assist with the defense of the *Parada* Lawsuit was necessary; the work performed by Blanco was necessary and directly related to the defense and the ultimate settlement of the *Parada* Lawsuit; and the work performed by Blanco did not include any insurance coverage related work in connection with the *Parada* Lawsuit.

8.     Under Texas law, a jury finding of gross negligence must be unanimous and any award of exemplary damages must be unanimous as to amount.  TEX. CIV. PRAC. & REM. CODE §

21

41.003(d); *see also Cullum v. White*, 399 S.W.3d 173, 188 (Tex. App. – San Antonio 2011, pet. denied) (unanimity required as to liability as well as amount of damages).

9.     In addition, § 41.003(a) permits a finding of gross negligence only if proven by clear and convincing evidence.  *See also* TEXAS CIVIL PATTERN JURY CHARGE ("PJC") 4.2 – Standards for Recovery of Exemplary Damages (liability for gross negligence requires jury to "find by "*clear and convincing evidence*" that the harm to [the plaintiff] resulted from gross negligence.") (emphasis added).  "'Clear and convincing evidence' means the measure or degree of proof that produces a firm belief or conviction of the truth of the allegations sought to be established."  *Id.*  PJC 4.2 applies to all cases filed on or after September 1, 2003, *id.* at Cmt., and thus would have applied in the *Parada* Lawsuit.

10.     PJC 4.2 further instructs that "'[g]ross negligence' means an act or omission by [the defendant] 1. which when viewed objectively from the standpoint of [the defendant] at the time of its occurrence involves an *extreme degree* of risk, considering the probability and magnitude of the potential harm to others; *and* 2. of which [the defendant] has *actual, subjective awareness* of the risk involved, but nevertheless proceeds with *conscious indifference* to the rights, safety, or welfare of others."  PJC 4.2 (emphasis added); *see also* TEX. CIV. PRAC. & REM. CODE § 41.001(11) (2021) (same) (history and notes also showing that no amendments to the definition of gross negligence have been made since September 1, 2003); PJC 4.2A ("'Gross negligence' means more than momentary thoughtlessness, inadvertence, or error of judgment.  It means such an entire want of care as to establish that the act or omission in question was the result of actual conscious indifference to the rights, welfare, or safety of the persons affected by it.").  Texas law considers an award of punitive damages due to gross negligence to be "exceptional."  *U-Haul Intern., Inc. v. Waldrip*, 380 S.W.3d 118, 140 (Tex. 2012).

11. The Court finds and concludes that Great West's breach of the duty to defend was the proximate cause of the damages MVT sustained.

12. Great West asserted as an affirmative defense its entitlement to "comparative offset and contribution for the negligence, liability, fault or conduct attributable to . . . MVT[.]"  Answer to Am. Cmplt., ECF 44, at ¶ 69.  The Court concludes that Great West has no such entitlement. First, Texas law does not countenance contribution in breach of contract actions.  *See, e.g.*, *Park v. Escalera Ranch Owners' Ass'n,* 457 S.W.3d 571, 602-03 (Tex. App. – Austin 2015) (affirming that defendants cannot "seek contribution when plaintiff's claims against defendant sound in contract" (citation omitted)); *ADC Rig Servs., Inc. v. JPMorgan Chase Bank, N.A.*, No. CIV.A. H-08-1640, 2009 WL 1011151, at *3–4 (S.D. Tex. Apr. 15, 2009) (contribution "is not available in contract claims"); *see also Tanglegrove Townhouse Condominium Ass'n*, 877 S.W.2d 489, 493 (Tex. App.—Texarkana 1994, writ denied) (reduction in damages under comparative negligence is applicable to negligence actions only and not to recoveries for breach of contract); *White Budd Van Ness P'ship v. Major-Gladys Drive Joint Venture*, 798 S.W.2d 805, 820 (Tex. App.—Beaumont 1990, writ dism'd) ("We conclude, therefore, that when the situation is pure contract, the special issues should not include comparative causation.") (citing 5 A. Corbin, Corbin on Contracts secs. 999–1,000 (1964)).

13. The Court further concludes that Great West did not assert a claim for equitable offset.  *Principal Life Ins. Co. v. Renaissance Healthcare Sys.*, No. H-06-2973, 2007 U.S. Dist. LEXIS 80340, at *7 n.1 (S.D. Tex. Oct. 30, 2007) ("offset" is "an equitable counterclaim, not an affirmative defense"); *Cap. Concepts Properties 85-1 v. Mut. First, Inc.*, 35 F.3d 170, 175 (5th Cir. 1994) (observing that an offset "is proper only where demands are mutual, between the same parties, and in the same capacity or right"); *see also Sharyland Water Supply Corp. v. City of Alton*,

354 S.W.3d 407, 414 (Tex. 2011) (noting that "the offset disappeared when [the defendant's] counterclaim was defeated on summary judgment" and that "there were no longer any claims to offset"). In addition, the Court finds and concludes that Great West did not identify, offer evidence of, or prove that any amount it already paid should be used to offset any recovery by MVT in this case.

14.     Great West neither pled nor proved by a preponderance of the evidence the affirmative defense that MVT failed to mitigate its damages.

15.     At trial, Great West sought to prove on cross-examination and through exhibits that MVT and its counsel may have known or had reason to know before April-May 2015 that Great West had wrongfully denied coverage back in 2013. Because Great West did not plead mitigation of damages as an affirmative defense or plead a counterclaim for offset (or contribution, to the extent it is even applicable), the Court need not make any findings as to when MVT first learned that Great West had made a coverage mistake. The Court was not persuaded by Great West's theory or suggestion that MVT should have caught Great West's mistake and brought it to Great West's attention sooner than it did.

16.     In sum, on MVT's breach of contract claim against Great West, the Court concludes that MVT is entitled to recover $541,476.84 in damages.

**B.     MVT's Claim Under Prompt Payment of Claims Act**

17.     A claim under Chapter 542 of the Texas Insurance Code (Prompt Payment of Claims Act) has three elements—MVT must show that "(1) a claim was made under an insurance policy, (2) [Great West] is liable for the claim, and (3) [Great West] failed to follow one or more sections of the prompt-payment statute with respect to the claim." *Lyda Swinerton Builders, Inc.*

*v. Oklahoma Sur. Co.*, 903 F.3d 435, 450 (5th Cir. 2018) (quoting *United Nat. Ins. Co. v. AMJ Invs., LLC*, 447 S.W.3d 1, 13 (Tex. App.—Houston [14th Dist.] 2014, pet. dism'd)).

18.     On summary judgment, this Court concluded that MVT established each of the elements of its Chapter 542 claim.  Specifically, the Court determined that (1) on October 28, 2013, MVT tendered the *Parada* Lawsuit to Great West for defense under the Policy; (2) on December 10, 2013, Great West wrongfully denied coverage, therefore establishing liability under the PPCA as a matter of law; and (3) MVT completed its claim under the PPCA when it submitted Mr. Blanco's fees to Great West on September 1, 2015, fees that Great West still has not paid. ECF 100 at 47-49.

19.     At trial, MVT established that it incurred $41,476.84 in attorney's fees and costs paid to Mr. Blanco to defend MVT in the *Parada* Lawsuit.  The Court has found these fees to be reasonable in amount and necessary in MVT's defense in that case.  The Court concludes that MVT is entitled to recover $41,476.84 plus the statutory amount of penalty interest on these fees and costs.[8]

20.     Great West has stipulated that, "[b]y denying coverage, [it] lost its ability to control, influence, *or object to* the manner in which MVT chose to staff its defense."  PTO at 12 (Stipulated Factual Contention 17) (emphasis added).  Consequently, the Court overrules Great West's objection to MVT's retention of Steve Blanco as part of its litigation defense team in the *Parada* Lawsuit.

21.     The Court also holds that Great West does not have standing to invoke – and cannot avail itself of – whatever objections *C&F* may have been able to make to justify its refusal to

---

[8] To be clear, although the Court has found and concluded that Mr. Blanco's fees and costs are recoverable both as a consequential damage of Great West's breach and the proper basis for a claim under the PPCA, MVT is not entitled to double-recover those fees and costs.  MVT is entitled only to $41,476.84 plus statutory interest.

reimburse MVT for the fees/costs that Mr. Blanco billed in defending the *Parada* Lawsuit.  Unlike Great West, C&F did not wrongfully deny coverage to MVT.  Thus, although C&F may well have been on firm footing to object to Blanco's bills because he was MVT's "independent counsel" or because C&F had not defended subject to a reservation of its rights, Great West lost those objections when it wrongfully denied coverage.

22.     The Court previously held that Great West impermissibly waited until its reply brief in its Motion to Reconsider the Court's summary judgment decision to raise for the first time the argument that the Texas PPCA does not apply to workers' compensation insurance coverage.  ECF 113 at 5-6.  The Court held that Great West had not shown good cause for failing to make that argument in the principal summary judgment briefing.  *Id.* at 5.  The Court reaffirms that holding here.

23.     In the same opinion, the Court expressly left open whether the Employers Liability component of the WC/EL policy at issue here took this case outside the workers' compensation exclusion in Texas Insurance Code § 542.053(1)(a).  *Id.* at 6 n.3.  The Court today answers that question in the affirmative.  The Court concludes that the exception to the PPCA for workers compensation insurance coverage [Tex. Insur. Code §§ 542.052 and 542.053(a)(1)] is not applicable to this case.  To begin, Mr. Blanco's fees were incurred entirely in litigating in state district court a tort case against what at the time was believed to be a non-subscribing employer (MVT).  The *Parada* lawsuit was most assuredly *not* a workers' compensation case, either in form or in forum.  Moreover, when Great West finally agreed to defend MVT beginning in May 2015, it did so only under the *employers liability* part of the policy.  *See* Ex. 6 at 2 ("Great West acknowledges its duty to defend MVT in the [*Parada*] Lawsuit under the *Employers Liability coverage section (Part B)* of the WC/EL policy.") (emphasis added).  For these reasons, the Court

concludes that the carve-out from the PPCA for workers' compensation insurance coverage is not applicable to this case.

**C.**    **Attorney's Fees of Counsel in the Instant Case**

24.    The Court concludes that MVT is entitled to recover its reasonable and necessary attorney's fees incurred in the present action pursuant to Texas Civil Practice and Remedies Code § 38.002.  "The prerequisites to recover for attorneys' fees under section 38.001 are: (1) the recovery of a valid claim in a suit on an oral or written contract; (2) representation by an attorney; (3) presentment of the claim to the opposing party; and (4) failure of the opposing party to tender payment of the just amount owed before the expiration of thirty days from presentment." *Ventana Invs. v. 909 Corp.*, 879 F. Supp. 676, 678 (E.D. Tex. 1995).

25.    The Court finds and concludes that: (1) MVT is entitled to recover on its valid claim for breach of contract against Great West; (2) MVT is represented by counsel in this action; (3) MVT presented its claim for breach of the WC/EL Policy to Great West; (4) MVT specifically pleaded for attorney's fees in this action under Texas Civil Practice and Remedies Code § 38.002; and (5) Great West did not tender payment of MVT's demand for breach of the WC/EL Policy within 30 days after it was presented.

26.    The Court also determines that MVT is entitled to recover attorney's fees under Texas Insurance Code Chapter 542.  *See, e.g.*, *Agredano v. State Farm Lloyd's*, No. SA-15-CV-01067-RCL, 2018 WL 3579484, at *4 (W.D. Tex. July 25, 2018) ("[A]ttorney's fees here are automatically provided for by . . . § 542.060 . . . regardless of whether the pleadings demanded them.").

27.    MVT is entitled to recover attorneys' fees under both Chapter 542 and Chapter 38. To be clear, MVT is not entitled to double-recover its fees.  The Court will determine the specific

statutory basis and reasonable amount of attorney's fees to be awarded to MVT after receiving

post-trial briefing and evidence.

   **SO ORDERED.**[9]

THE HONORABLE GREGORY J. FOURATT
UNITED STATES MAGISTRATE JUDGE
*Presiding by Consent*

---

[9] At the end of MVT's case-in-chief at trial, Great West orally moved for a directed verdict as to the remaining counts in the Amended Complaint.  Tr. Vol. II at 119.  The Court took the matter under advisement.  *Id.*  For the reasons set forth in these Findings and Conclusions, the Court today formally denies Great West's motion.